JEROME A. HATHAWAY, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

CRIMINAL LAW—DEFENSE OF SERVANT—CIRCUMSTANCES JUSTIFYING REASONABLE BELIEF OF IMMINENT DANGER TO LIFE OF SERVANT ENOUGH TO EXCUSE HOMICIDE—FILING LISTS OF ALL WITNESSES SWORN BY GRAND JURY.

1. An individual indicted by a grand jury has no such personal interest in a compliance by the foreman of such grand jury with the provisions of Section 22, p. 624, McClellan's Digest, Section 2809, Revised Statutes, requiring such foreman to return to the court a list of all witnesses sworn before such grand jury during the term, as would cause a non-compliance with such statute to affect his rights under such indictment in any way, or that could make such non-compliance a ground for abatement of the prosecution against him, or that could furnish him with any ground of exception upon writ of error after conviction.

2. The same circumstances that will justify or excuse the homicide where the assault is upon one's self, will also excuse or justify the slayer if the killing is done in defense of his or her husband, wife, parent, child, master, mistress or servant.

3. Where the defendant sets up in justification of the homicide that the killing was done in defense of his servant, it is error to charge the jury that "before they can acquit, the evidence must satisfy them that there was in fact imminent danger of the apparent design of the deceased to kill or inflict great personal injury being accomplished." All that was necessary to establish such defense was for the defendant to show, from

the evidence, that he was surrounded by such a state of affairs as made it *reasonable* for a cautious and prudent man, thus situated, to *believe* that his servant was in imminent danger of losing her life, or of receiving great personal injury at the hands of the deceased, unless he struck the fatal blow. Smith vs. State, 25 Florida, 517, 6 South. Rep.. 482; Pinder vs. State, 27 Florida, 370, 8 South. Rep., 837, cited' and approved.

Writ of error to the Circuit Court for Marion county.

The facts of the case are stated in the opinion of the court.

*James H. Curry* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

TAYLOR, J. :

At the Spring term 1890, of the Circuit Court for Marion county, the plaintiff in error was indicted for murder in the first degree of one William J. Jerkins. After various continuances the trial was had at the Spring term 1893, and resulted in a conviction for manslaughter in the second degree. From the sentence pronounced, the defendant seeks reversal here on writ of error.

The first assignment of error insisted upon is the sustaining of the State's demurrer to a plea in abatement interposed by the defendant, which plea claimed an abatement of the prosecution upon the ground that the foreman of the grand jury that found the indictment at the Spring term of the court, 1890, had failed to comply with the provisions of Section 22, p. 624, McClellan's Digest, Section 2809, Rev. Stat., which requires the foreman of every grand jury to return to the court a list under his hand of all witnesses who

shall have been sworn before the grand jury during the term, to be filed of record by the clerk. There was no error in the ruling complained of. What the purpose or intention of this statutory provision is, it is unnecessary for us now to decide, but we can not see how a compliance or non-compliance therewith could ever in any way affect the validity of any specific indictment that might be regularly found and presented by any such grand jury; nor how the rights of any such indicted individual could be affected for good or for bad by either a compliance or non-compliance therewith. The statute seems to contemplate that such list of witnesses shall be made up and returned to the court at the close of the grand jury's labors, as it requires a list of *all* witnesses sworn and examined *during the term*. That any individual indicted by such grand jury is not designed to have any personal interest in the compliance with this law, becomes evident when it is remembered that many persons indicted during the first days' sittings of grand juries, are actually and regularly tried, before the same grand jury that indicts have completed their labors, so as to be able to prepare such list for filing. In State vs. Wilkinson, 76 Me., 317, it was held that a similar statute was not mandatory, but directory merely, and that an omission of its requirements does not, as a matter of right, furnish ground for exception.

The 8th and 9th charges given of the court's own motion are assigned as error, and are as follows: "8th. If you believe from the evidence that Harriet E. Jerkins, the wife of the deceased, was, at the time that deceased was killed, the hired servant of defendant, and that there was reasonable ground for the defendant to apprehend a design on the part of the de-

JUNE TERM, 1893. 59

Jerome A. Hathaway v. The State of Florida.—Opinion of Court.

ceased to commit a felony on her, or do her some great personal injury, and that there was imminent danger of such design being accomplished, then, and in that case, you will find him not guilty." "9th. If you do not find the defendant guilty of murder in the first degree, and if you should be satisfied from the evidence beyond a reasonable doubt that the defendant killed the deceased when the deceased was not engaged in committing a felony, nor attempting some great personal injury to Harriet E. Jerkins, the wife of the deceased, and if you are satisfied from the evidence beyond a reasonable doubt that at the time of the killing, the said Harriet E. Jerkins was not the hired servant of the defendant, and that there was not at that time imminent danger of the deceased committing a felony or doing her some great bodily injury, then, and in that case, you must find the defendant guilty of murder in the first degree." The court, at defendant's request, also gave the following charge: "If from the evidence you find that at the time the defendant struck the fatal blow he was surrounded by such circumstances as made it from his point of view, as a reasonable man, reasonably appear that such steps were necessary in order to protect the said Harriet E. Jerkins from loss of life or from great personal injury, you must find the defendant not guilty;" but before giving it the court added thereto the following proviso: "Provided you are satisfied from the evidence that there was imminent danger to her life or of great bodily injury." At the defendant's request the court also gave the following charge: "If from the evidence you find that at the time the deceased was struck by the defendant, the said Jerkins appeared reasonably to defendant to be in the act of killing Mrs. Jerkins, or of doing her great personal

injury, you will find him not guilty." But before
giving same the court added thereto the following pro-
viso: "Provided the evidence satisfies you that there
was imminent danger of it being accomplished." The
giving of these two instructions with the provisos
added thereto by the court are also assigned as error.
The 8th instruction above and the proviso added by
the court to the last two are all subject to the same ob-
jection, and, under the proofs in this case, were so
erroneous as to necessitate a reversal. The proof
shows that the homicide here was committed in the
dwelling house of the defendant, and there was proof
tending to show that the wife of the deceased was re-
siding at the house of defendant in the capacity
of his servant, and that the defendant struck the
fatal blows after the deceased had knocked such ser-
vant down with a chair, after declaring with an oath
that he would kill her, and while he had the chair
raised to strike her again. That the defendant came
from an adjoining room into the room where the de-
ceased and his wife were, and finding them in this at-
titude, at once struck the blows that resulted in death.
Under these circumstances it was of vital importance
to the defendant on his trial to have the law as to what
circumstances would constitute justifiable or excusa-
ble homicide accurately stated to the jury. Under our
law, the same circumstances that would justify or ex-
cuse the killing of an assailant where the assault is
upon one's self, will also excuse or justify the slayer if
the killing is done in defense of his or her husband,
wife, parent, child, master, mistress or servant. In
the case of Smith vs. State, 25 Fla., 517, 6 South. Rep.,
482, and in Pinder vs. State, 27 Fla., 370, 8 South.
Rep., 837, the rule of law has been established to be
that all that can be required of the prisoner in such

JUNE TERM, 1893. 61

Jerome A. Hathaway v. The State of Florida.—Opinion of Court.

cases is to show that he was surrounded by such a condition of affairs as made it, from his standpoint, *reasonable* for a cautious and prudent man to *believe* that it was necessary to strike the fatal blow in order to save himself from death or great bodily harm. In this case the defense was that the defendant struck the fatal blow to save, not himself, but his servant, from either death or great bodily harm. All that could have been required of him to establish such defense was to show, from the evidence, that he was surrounded by such a state of affairs as made it *reasonable* for a cautious and prudent man thus situated to *believe* that his servant was in imminent danger of losing her life or of receiving great personal injury unless he struck the fatal blow. So then, when the court, as in these instructions, charged the jury, in effect, that the evidence must satisfy them that *there was in fact* imminent danger of the *apparent* design of the deceased to kill or inflict great personal injury being accomplished, it stated the law erroneously, and required the defendant to bring forward a greater degree of proof to establish justification than the law requires.

The 9th instruction above, given on the court's own motion, is also erroneous because it is confusing, and might have a tendency to mislead the jury into a belief that the court was convinced of the propriety of a verdict of murder in the first degree. It begins with the hypothesis that if the jury shall conclude that the defendant is not guilty of murder in the first degree, that then if they find another given state of facts to be true they *must* find him guilty of murder in the first degree, even though they may already have concluded that he was not guilty of that degree.

As the errors in the instructions necessitate another trial of the cause, we think it proper, although it is not

assigned as error here, and no exception was taken thereto in the court below, to point out another serious error in the 14th charge of the court to the jury wherein they are instructed as follows: "If you do not find the defendat guilty of either murder in the first degree or third degree, or of manslaughter in the second degree, your verdict will be: 'We, the jury, find the defendant not guilty.'" This charge patently invades the province of the jury, and is tantamount to saying that from the evidence the jury must convict either of murder in the first or third degree, or of manslaughter in the second degree, or of nothing, when there was testimony in the case that would have sustained a conviction of manslaughter in the fourth degree.

The judgment of the court below is reversed and a new trial ordered.