SEABOARD AIR LINE RAILWAY, A CORPORATION, *Plaintiff in Error,* v. E. P. RENTZ AND J. C. LITTLE, AS COPARTNERS DOING BUSINESS UNDER THE NAME AND STYLE OF E. P. RENTZ LUMBER COMPANY, *Defendants in Error.*

60   429
cc60  453

1. When a defendant in an action at law enters a special appearance on the return day of the writ, specifying therein that it is "for the purpose, and none other, of contesting the issuance, validity and service of the summons *ad respondendum* therein," and afterwards files a motion to "quash plaintiffs' praecipe" on the sole ground that the praecipe "fails to state the nature of the action as is required by section 1392 of the General Statutes of Florida," no error is committed in denying such motion, even if a motion to "quash a praecipe" might lie in a proper case.

2. There is a clear distinction in the functions performed by a demurrer to a pleading and a motion for the compulsory amendment thereof, and this distinction should be observed. They cannot be used interchangeably and indiscriminately employed, as they are governed by essentially different rules of procedure.

3. The granting or denial of a motion for the compulsory amendment of a pleading, based on the statute, is a matter resting within the sound judicial discretion of the trial court and the ruling thereon will not be disturbed by an appellate court, unless it is plainly made to appear that there has been an abuse of such discretion.

4.  The object of judicial proceedings is to ascertain and to decide upon disputes between parties. In order to do this, it is indispensable that the point or points in controversy be evolved and distinctly presented for decision. The pleadings in an action at law are designed to develop and present the precise points in dispute and they should be characterized with certainty, clearness and conciseness. The administration of justice is a practical affair and the pleadings should not be converted, or rather perverted, into logomachies or logic-chopping.

5.  In actions at law where the negligence of the defendant is the basis of recovery it is not necessary for the declaration to set out the facts constituting such negligence, but an allegation of sufficient acts causing injury to the plaintiff, coupled with an allegation that such acts were negligently done, will be sufficient.

6.  No error is committed by the trial court in overruling a motion of the defendant for the compulsory amendment of the declaration, seeking to require the plaintiff to separate the acts of negligence complained of and to state the same specifically in separate counts, especially when no harm is shown to have resulted to the defendant from such ruling.

7.  In an action at law against a railroad company, an allegation in the declaration "that defendant negligently and carelessly failed and refused to transport and deliver the said cars loaded by the plaintiffs with the said pine lumber with reasonable promptness and dispatch after the same were loaded with the said lumber by the plaintiffs and delivered to the defendant on the sidings aforesaid, to be transported to J.," by reason whereof the plaintiffs suffered loss, is not equivalent to an allegation that the freight was accepted by the defendant for transportation.

8.  In an action against a railroad company, seeking to recover damages for its delay in the transportation and delivery of certain freight, where the declaration fails to allege directly or to charge that such freight was ever accepted by the defendant for transportation, but, fairly construed, the declaration would seem to charge no more than a failure upon the part of the defendant to accept and transport certain freight offered to it by the plaintiffs for shipment, it is error to sustain a

demurrer to a plea filed to the declaration, which avers, in substance, that, at the times mentioned in the declaration, owing to an unusual and extraordinary condition of affairs which then prevailed, the defendant was unable to meet the demand upon it to furnish sufficient cars to shippers to transport all their freight, that it did use all reasonable and proper diligence in its efforts to supply the plaintiffs with a fair and proper proportion of its available cars; that the "plaintiffs knew, or could have known by the use of reasonable diligence," of the existence of such extraordinary condition of affairs, by reason of which the "defendant would probably be unable to supply them with the cars required by them with usual promptness."

9. Where a carrier fails or refuses to accept freight tendered to it for transportation because of its inability to transport it, which inability has been occasioned by extraordinary circumstances or an emergency that could not have been reasonably foreseen and for which the carrier is not responsible, such failure or refusal to accept freight for transportation may not give a shipper the right to recover damages for delays in the transportation of the freight tendered, where the carrier does all that could have been reasonably required of it to meet the demands made upon it for transportation.

This case was decided by Division A.

Writ of error to the Circuit Court for Marion County.

The facts in the case are stated in the opinion of the court.

*Geo. P. Raney* and *L. N. Green* for Plaintiff in Error;

*H. M. Hampton* for Defendants in Error.

SHACKLEFORD, J.—The defendants in error recovered a judgment in an action at law against the plaintiff in error, which the latter brings here for review by writ of

error. The case was referred to and tried by the Honorable Richard McConathy as referee, after the issues therein had been made. Twenty-four errors are assigned, the first eleven of which are based upon the different rulings made by the circuit judge on the pleadings.

We might well say of these assignments as Mr. Justice HOLMES did say in Holt v. United States,     U. S., 31 Sup. Ct. Rep., 2. "The seriousness of some of the questions raised is somewhat obscured by a number of meticulous objections." Following his example and adopting his language, "We shall dispose of the latter summarily, and shall discuss at length only matters that merit discussion."

The first assignment is that the court erred "in denying defendant's motion to quash plaintiff's praecipe for summons *ad res.*" We find that the praecipe, which is copied in the transcript, was filed on the 25th day of April, 1907, that on the 6th day of May, which was the Rule day, the plaintiffs filed their declaration and on the same day the defendant entered its special appearance "for the purpose, and none other, of contesting the issuance, validity and service of the summons *ad respondendum* therein," and that on the 31st day of May the defendant filed its motion with the order of the court hereon denying the same. The sole ground of the motion is that the praecipe "fails to state the nature of the action as is required by section 1392 of the General Statutes of Florida. This section is as follows:

"1392. (1007). How suits are begun.—A personal suit at law is begun by filing in the court in which the suit is to be commenced a praecipe or memorandum, stating the names of the parties, the nature of the action and the amount of the debt or damages for which the plaintiff sues; which praecipe shall be signed by the plaintiff or

his attorney. Upon the filing of such praecipe or memorandum, there shall be issued from such court a summons ad respondendum, which shall be called the original."

It is unnecessary for us to follow the defendant's statement as to the ancient practice in regard to writs and what was required to be stated therein. Suffice it to say that it is admitted that section 1394 of the General Statutes expressly abolished the requirement that the writ of summons should state or mention the form of action. The defendant earnestly contends that there is a material difference between the form and the *nature* of the action and that the latter is expressly required to be stated in the praecipe. We shall not take the time to discuss the argument made. Conceding that such distinction exists, how can that avail the defendant on a motion to quash the praecipe? The defendant cites 20 Ency. of Pl. & Pr. 1142 and especially relies upon the case of Moody v. Taylor, 12 Iowa 71, cited in note 2. Unfortunately for it, the cited case does not support its contention. The decision therein, as is expressly stated, is based upon Section 1715 of the Iowa Code of 1851, and the practice there widely differed from the practice here. There an action was begun by serving the defendant with a notice, which was required to state certain things, and which notice occupied the place of our summons. In the opinion rendered in the cited case it was held that the motion to squash such *notice* should have been granted for its failure to contain all the statutory requirements. The difference in the cited and the instant case is obvious, and no further comment thereon is necessary. We pass the question, which presents itself, as to whether or not the appearance which was entered in this case, strictly speaking, can be considered a special appearance. See Dudley v. White, 44

Fla. 264, 31 South. Rep. 830; 2 Ency. Pl. & Pr. 620; 4 Ency. L. & P. 988. We would also call attention to the liberal policy of our law in the way of allowing amendments, even where one form of writ of summons has been substituted for another, as evidenced by Section 1395 of the General Statutes of 1906. Also see the opinion of Mr. Justice HOCKER in another case between these same parties, decided at the present term, 54 South. Rep. 20, in discussing the same point. What is said there is alike applicable here.

On the first day of June the defendant filed a motion for the compulsory amendment of the declaration consisting of seventeen grounds, and at the same time interposed a demurrer, containing fifteen grounds. The overruling of the motion forms the basis for the second assignment and the overruling of all the grounds of the demurrer, except the fourth, tenth and fourteenth, which were sustained, is the error complained of in the third assignment. As neither of these assignments is argued, they must be deemed to have been abandoned.

On the 17th day of July, within the time granted by the court, the plaintiffs filed their amended declaration, to which the defendant filed a motion for compulsory amendment based on nineteen grounds and at the same time interposed a demurrer setting out sixteen separate grounds. The overruling of such motion and demurrer furnishes the predicate for the fourth and fifth assignments. Practically all of the different grounds of both the motion and the demurrer are elaborately argued and insisted upon by the defendant, fifteen pages of its typewritten brief being given to their discussion. As we have already pointed out, a motion and a demurrer of similar character had been interposed to the original declaration, argued before and ruled upon by the court, with the result

that three of the grounds of the demurrer had been sustained. The amended declaration was an attempt upon the part of the plaintiffs to supply the deficiencies which the court had decided existed in the original declaration. But, if we are to accept the contentions of the defendant, the amended declaration is even more defective than the one originally filed; so much so that it is open to attack both by motion and demurrer upon nineteen grounds in the one and sixteen in the other, which, if true, would make the declaration wonderfully defective indeed. We have often had occasion to point out the different functions performed by a motion for the compulsory amendment of a pleading and a demurrer thereto. See Southern Home Ins. Co. v. Putnal, 57 Fla. 199, 49 South. Rep. 922, where a number of prior decisions of this court will be found collected. We have also held that the granting or denial of a motion for the compulsory amendment of a pleading, based on Section 1043 of the Revised Statutes of 1892, now Section 1433 of the General Statutes of 1906, is a matter resting within the sound judicial discretion of the trial court, since such court must determine whether or not the pleading so sought to be reformed is "so framed as to prejudice or embarrass or delay the fair trial of the action," and the ruling of the trial court thereon will not be disturbed by an appellate court, unless it is plainly made to appear that there has been an abuse of this judicial discretion. Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318, and Gainesville & Gulf R. Co. v. Peck, 55 Fla. 402, 46 South. Rep. 1019. We have availed ourselves of all the assistance given by the defendant in its brief, but do not find any abuse of discretion in the denial of the motion. Special demurrers have been abolished in this State, the statute for the compulsory amendment of pleadings, to which we have just referred,

being supposed to perform such functions of special de-
murrers as it was deemed desirable to preserve. See
Camp v. Hall, 39 Fla. 535, 22 South. Rep. 792. It may
well be questioned whether this has really simplified our
pleadings or improved matters. This is neither the time
nor place to treat *in extenso* of the system of pleading and
practice in this State. It may be well for us, members of
the bench and bar alike to bear in mind, as was cogently
said by Dr. Samuel Tyler, in the masterly introduction to
his edition of Stephen's Pleading:

"The object of judicial proceedings is to ascertain and
to decide upon disputes between parties. In order to do
this, it is indispensable that the point or points in contro-
versy be evolved and distinctly presented for decision.
The common law and the civil law have different modes
for accomplishing this purpose. The rules of common law
pleading are designed to develop and present the precise
point in dispute *upon the record itself,* without requiring
any action on the part of the court for the purpose. The
parties are required to plead alternately in writing, until
their respective allegations of affirmation and denial ter-
minate in a single material issue, either of law or fact,
the decision of which will dispose of the cause."

This statement is clear, direct and easily comprehended.
If it be true that, in attempting to simplify the common
law system of pleading, our legislators in enacting laws
and our judges in making rules have applied the pruning-
knife too ruthlessly and have gone so far that they have
marred that which they intended to mend, as has been
often claimed, then it is certainly high time that the mat-
ter should be carefully looked into and proper action
taken to straighten out the tangle in which we would seem
to have become involved. This seems to be generally
recognized by the judges and lawyers alike as well as by

the general public, hence on all sides we hear the hue and cry for reform in our court procedure. Without intending to approve or endorse all that is said herein, we would refer to the discussion along this line to be found in the dissenting opinion of Mr. Justice EVANS in Pollak v. Winter, ˙Ala. , 53 South. Rep. 339, in two editorials in *Central Law Journal,* Vol. 71, pp. 309, 327, the respective title of which are "Decisions Relating Solely to Procedure and Practice," and "Mental Attitudes of Bench and Bar toward Reform in Judicial Procedure Contrasted," and in an article entitled "Simplification of Legal Procedure—Expediency Must Not Sacrifice Principle," by Mr. Thomas W. Shelton, page 330 of Vol. 71 of the same publication. The writer may be permitted to refer to some of his own remarks in his dissenting opinion in White v. State, 59 Fla. 53, text 60, 52 South. Rep. 805, text 807, where he quoted with approval from the opinion rendered by Mr. Justice COBB in Kelly v. Strouse, 116 Ga. 872, text 899, 43 S. E. Rep. 280, that "Courts of last resort are composed of human beings, and are liable to make mistakes both in rulings and reasoning, and unguarded and ill-considered expressions are as apt to emanate from them as from others." The writer hereof then proceeded to add that this must necessarily follow from the fact that they are human beings, therefore not infallible, but subject to like infirmities and short-comings as other men. This being true, members of the bar as officers of the court should render the judges all possible assistance in properly discharging their arduous duties and should be careful not to˙impose unnecessary burdens upon them. The judges both of the *nisi prius* and appellate courts, being mortals, should not be expected to have greater capacity for work or powers of endurance than members of the bar. They have their limitations, even though patience, for-

bearance and good-nature are supposed to be virtues which peculiarly belong to them. See the authorities along this line cited in the dissenting opinion in White v. State, *supra,* especially Dime Savings Institution v. Allentown Bank, 65 Pa. St. 116, text 123, wherein Mr. Justice AGNEW, referring to "indiscriminate allegations and useless discussions," has well said: "They distract our minds by diverting them to consider matters of no moment, and weaken the strong points, if any, by heaping upon them those that are feeble. Upon a writ of error it is much better to consider well the positions which seem to be fairly tenable, and to present them alone. Then the argument spends its concentrated force upon that which commands consideration, and the attention of the judges is not diverted to that which is immaterial. In this way real error is apt to be detected; while in the other, the mind, wearied by unimportant exceptions and inconclusive discussions, is more likely to overlook material errors. I commend these remarks to those who practice before us."

It is also a well-known fact that some of our *nisi prius* courts have so many matters coming before them that frequently they cannot give the time and attention to cases which they would like to do. Counsel should be zealous in watching over and protecting the interests of their clients, but they should not permit their zeal to cause them to forget their duty to the court and to the general public. We should all bear in mind that courts of justice exist for the administration and furtherance of justice, and members of the bench and bar alike should co-operate and work to that end. By so doing much can be done to expedite matters and dispatch the public business. We should never let our vision become so clouded by the pleadings in a case as to cause us to lose sight of the goal which we are striving to attain; that would be to repeat the

blunder of losing sight of the forest on account of the trees or of failing to see the city by reason of the houses. As has already been said and is well known, the object of the pleadings in a case is to define and bring out clearly the issues that are to be determined, not to obscure or conceal them, as, according to a saying generally attributed to Talleyrand, language was given to man to conceal his thoughts. Obscurity of expression is commendable nowhere, but in pleadings it is especially to be abhorred. The late Frederic W. H. Myers characterized "curiosity, candor and care" as the pre-eminent intellectual virtues. It may well be that the chief virtues which should characterize pleadings are certainty, clearness and conciseness.

. The statute providing for the compulsory amendment of pleadings was never intended to perform a similar function to that of the bed of Procrustes, or to be so used as of itself to "prejudice or embarrass or delay the fair trial of the action." The administration of justice is a practical affair and the pleadings should not be converted, or rather perverted, into logomachies or logic-chopping. Some of the distinctions attempted to be drawn by the defendant in support of the many grounds of its motion and demurrer are too fine and cobwebby for the writer of this opinion to grasp. In trying to do so he finds himself becoming obfuscated. This is not intended as a reflection upon the able counsel representing the defendant, but rather as a confession of the writer's own limitations. As Professor William James has well said: "It is a matter of popular observation that some men have sharper senses than others, and that some have acuter minds and are able to 'split hairs' and see two shades of meaning where the majority see but one." It would seem that the defendant was seeking to require the plaintiffs to plead their evidence, which would have been violative of a cardi

nal rule of pleading.   We have several times held that "In actions where negligence is the basis of recovery it is not necessary for the declaration to set out the facts constituting the negligence, but an allegation of sufficient acts causing the injury, coupled with an averment that they were negligently done, will be sufficient." Consumers' Electric Light and St. R. Co. v. Pryor, 44 Fla. 354, 32 South. Rep. 797; Jacksonville Electric Co. v. Schmetzer, 53 Fla. 370, 43 South. Rep. 85; Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761. It is true that these cited cases were actions where damages were sought to be recovered for personal injuries alleged to have been caused by the negligence of the defendant, but the same principle applies in any action wherein negligence forms the basis for recovery.   See Moore v. Lanier, 52 Fla. 353, 42 South. Rep. 462; Benedict Pineapple Co. v. Atlantic Coast Line R. Co., 55 Fla. 514, 46 South. Rep. 732; Woodbury v. Tampa Water Works Co., 57 Fla. 243, 249, 49 South. Rep. 556.   We have likewise held that "no error is committed by the trial court in overruling a motion of defendant for the compulsory amendment of the declaration, seeking to require the plaintiff to separate the acts of negligence complained of and to state the same specifically in separate counts," especially when no harm is shown to have resulted to the defendant from such ruling.   Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318.   As we understand it; this disposes of the two principal contentions urged by the defendant in support of these two assignments.   We use the words, "as we understand it," advisedly.   We have made an earnest attempt to follow the defendant in its labyrinthine contentions and to examine the authorities cited to support the same, but we are by no means sure that we have been successful in doing so.

In one instance the defendant has cited "3 Ency. of Pl. & Pr. 813 to 863, and particularly 814, Note 1, and 849, note 5." We have examined the particular pages referred to, but must most respectfully beg to be excused from reading or looking through 50 pages of a legal encyclopedia.

It seems to the writer that we ought all to be good pragmatists, at least in so far as the *pragmatic method* is concerned, and that nowhere could the principle be applied with a more salutary effect or conduce to more beneficial and practical results than in the practice of law or the administration of justice. Only slightly changing the language in which the principle was first promulgated by the brilliant Harvard psychologist, it might be expressed thus:

"Suppose there are two different definitions, or propositions, or maxims, or what not, which seem to contradict each other, and about which men dispute. If, by supposing the truth of the one, you can see no conceivable practical consequences to anybody at any time or place, which is different from what you would foresee if you supposed the truth of the other, why then the difference between the two propositions is no difference,—it is only a specious and verbal difference, unworthy of further contention. Both formulas mean radically the same thing, although they may say it in such different words. It is astonishing to see how many disputes collapse into insignificance the moment you subject them to this simple test. There can be no difference which doesn't make a difference—no difference in abstract truth which does not express itself in a difference of concrete fact, and of conduct consequent upon the fact, imposed on somebody, somehow, somewhere, and somewhen." So elsewhere he has said: "Strive to bring all debated conceptions to that 'pragmatic' test, and

you will escape vain wrangling: if it can make no prac-
tical difference which of two statements be true, then
they are really one statement in two verbal forms; if it
can make no practical difference whether a statement be
true or false, then the statement has no real meaning.
In neither case is there anything fit to quarrel about: we
may save our breath, and pass to more important things."

Applying this pragmatic test in the instant case, care-
fully considering the allegations of the declaration and
the grounds of the motion and the demurrer, we fail to see
wherein any harmful error was committed by the trial
judge in overruling them. It may well be true that the
amended declaration could have been more carefully and
skillfully framed, but, having reached the conclusion that
it was sufficient to withstand the assaults made upon it,
we shall now pass to the consideration of the other assign-
ments.

The defendant filed six pleas and the plaintiffs joined
issue upon the first two, interposed a demurrer to the
fourth, fifth and sixth, also filed a motion for the compul-
sory amendment of the same and at the same time filed a
motion to strike the third plea. Upon the demurrer and
motions coming on to be heard, the plaintiffs abandoned
the motion for a compulsory amendment, and the court
made an order granting the motion to strike the third
plea, overruling the first ground of the demurrer to the
fourth, fifth and sixth pleas and sustaining the second and
third grounds thereto. The sixth assignment, based upon
the sustaining of the motion to strike the third plea, is
not argued and is, therefore abandoned. The seventh as-
signment is based upon the sustaining of the second and
third grounds of the demurrer to the fourth, fifth and
sixth pleas and is argued at considerable length. We pass
it for the moment. By leave of the court, the defendant filed

nine amended pleas, covering six pages of the transcript. The plaintiffs joined issue upon the third, fourth and fifth pleas, filed a motion to strike the first two and interposed a demurrer to the sixth, seventh, eighth and ninth. The defendant thereupon filed a motion "to set aside" certain grounds of plaintiffs' demurrer, but no ruling is shown to have been made thereon. The demurrer was sustained and that ruling constitutes the basis for the eighth, ninth, tenth and eleventh assignments. The motion to strike the first and second pleas was granted, the court stating "it appearing that the defendant has heretofore filed the same pleas, upon which issue has been joined." The defendant was also allowed fifteen days from the date of the order "in which to file such further pleas as it may be advised," but does not appear to have availed itself of such permission.

We have given an account of the successive pleadings filed by the respective parties, though we have not copied such pleadings or even given a synopsis thereof, for the reason that from such account it may be readily seen how protracted the proceedings in a litigated case may be even before issues are made up. This ought not to be and of itself has a tendency to confuse and cause the real issues to be lost sight of and thereby to defeat the ends of justice. We would emphasize what we have already said concerning such an unfortunate condition of affairs and the imperative need for reformation. Mr. Justice EVANS, in his dissenting opinion in Pollak v. Winter, *supra,* seems to place the blame almost entirely upon the system of pleadings in vogue in his State of Alabama, and what he says is about equally applicable to the system prevailing in this State. We give the following excerpt from his opinion:

"Under our present system one may plead as many

pleas as he pleases; he may plead inconsistent pleas. The plaintiff may reply with as many replications as he pleases, and with inconsistent replications, and so on. As to whether there shall be one or a thousand issues of law or fact depends upon 'the climate and the fertility of the soil.' The only natural place for this process to stop, with counsel who understands his business, is when he has reached a point where he feels reasonably sure of a verdict or a reversal of the judgment."

This is indeed a most deplorable situation. If it produces confusion and bewilderment in the lawyers and judges, as it undoubtedly does, what must be the effect upon juries, composed as they usually are of plain men? How are they to "well and truly try the issues" submitted to them, unless they can understand what such issues are? As we have already intimated, we are of the opinion that the entire blame is not to be charged to the system, and we have pointed out how the members of the bench and bar, by proper co-operation, can minimize the evil alleged to exist. We are inclined to think that our statutes regulating pleadings and our rules of practice have been perverted. Surely they were never intended to cause "the practitioner to devote no unconsiderable, if not the greater part, of his attention and effort to the obstructing, rather than the facilitating of the administration of justice," to borrow the words of the Editor of the *Central Law Journal.* One other matter we think it advisable to speak of, in passing. While much must necessarily be left to the judicial discretion of the trial judge in permitting additional or new pleas to be filed by a defendant, after pleas already filed by him have been adjudged to be defective or insufficient, that discretion should be wisely exercised. There must be a limit to pleading. See Hooker v. Forrester, 53 Fla. 392, 43 South. Rep. 241, and prior decisions of

this court therein cited upon this point. We do not wish to be understood as holding that the defendant is solely to blame for the bewilderment occasioned by the pleadings in this case. The plaintiffs have contributed their full share to "the labyrinth of confusion in which they appear to be involved," to quote Mr. Chief Justice RANDALL's expressive phrase from Mattair v. Payne, 15 Fla. 682, text 686.

To forestall a criticism of this opinion which might be advanced to the effect that we have made digressions, in which we have discussed points of pleading and practice generally at greater length than the assignments of error necessarily present, the writer of the opinion would as sume the sole responsibility for so doing. Assuming that such a criticism might be successfully maintained, he would say that he has long viewed with feelings of apprehension the growing tendencies in the practice which he has pointed out and discussed. He believes that such tendencies are fraught with pernicious consequences and he has availed himself of the opportunity here presented to make the foregoing observations concerning the matter. He would further state that he considers them to be timely and necessary, that the motives which actuate him are *pro bono publico,* and that he ventures to hope that they will be received by the members of the bar in the kindly spirit in which they are written and that they may produce fruitful results and beneficial consequences.

The only statement in the defendant's brief in support of the eighth, ninth, tenth and eleventh assignments, all based upon the sustaining of the demurrer to the sixth, seventh, eighth and ninth amended pleas, as we have already stated, is as follows:

"These amended pleas set out very much more voluminously the matters which the defendant sought to interpose

as a bar to the plaintiff's right of action, and to these pleas we refer the court, and submit their legitimacy to the law and the argument we have just made along the lines upon which they bear."

We have carefully examined these pleas in connection with the grounds of the demurrer interposed thereto, as well as the fourth, fifth and sixth pleas and the demurrer which was interposed to them, the sustaining of the second and third grounds of which forms the basis for the seventh assignment, which we temporarily passed. We have also availed ourselves of all the light thrown by the defendant's extended discussion in support of the seventh assignment. Even so and although we have devoted considerable time to the investigation of the different points sought to be presented by these assignments, we are by no means sure that we have fully grasped the defendant's contentions. We shall not attempt to discuss the assignments in detail. In view of the conclusion which we have finally reached we do not consider such discussion necessary, and it is doubtful if it would prove of any material profit.

We have held that the amended declaration was sufficient to withstand the assaults made upon it, but we do not wish to be understood as giving our sanction to it as good pleading. We do not feel that we are called upon to analyze and discuss the two lengthy counts composing it. It might be much improved by condensation and could be made more certain, clear, direct and positive in its allegations. We think that it is sufficient for us to say that, in our opinion, the allegation therein "that the defendant negligently and carelessly failed and refused to transport and deliver the said cars loaded by the plaintiffs with the said pine lumber with reasonable promptness and dispatch after the same were loaded with the said lumber by the plaintiffs and delivered to the defendant on the sidings

aforesaid, to be transported to Jacksonville," by reason whereof, &c., the plaintiffs suffered loss, is not equivalent to an allegation that the freight was accepted by the defendant for transportation. We are unable to gather from the declaration that it anywhere directly alleges or charges that such freight was ever accepted by the defendant for transportation. Fairly construed, it would seem to charge no more than a failure upon the part of the defendant to accept and transport certain freight offered to it by the plaintiffs for shipment.

The eighth plea, though characterized by undue prolixity and not as clear and direct as it might be, avers, in substance, that, at the times mentioned in the declaration, owing to an unusual and extraordinary condition of affairs which then prevailed, the defendant was unable to meet the demands upon it to furnish sufficient cars to shippers to transport all their freight; that it did use all reasonable and proper diligence in its efforts to supply the plaintiffs with a fair and proper proportion of its available cars; that the "plaintiff knew, or could have known by the use of reasonable diligence," of the existence of such extraordinary condition of affairs, by reason of which the "defendant would probably be unable to supply them with the cars required by them with usual promptness."

We refrain from copying the plea in full, as we do not believe that any useful purpose would be accomplished by so doing. Where a carrier fails or refuses to accept freight tendered to it for transportation because of its inability to transport it, which inability has been occasioned by extraordinary circumstances or an emergency that could not have been reasonably foreseen and for which the carrier is not responsible, such failure or refusal to accept freight for transportation may not give a shipper the right

to recover damages for delays in the transportation of the freight tendered, where the carrier does all that could reasonably have been required of it to meet the demands made upon it for transportation. The trial court would seem from its ruling on prior pleas to have held them bad upon the theory that where the freight was accepted the carrier must then give notice of probable delay. As we have shown the declaration to be so loose as to allegations of acceptance, the plea in question should not be held to stricter construction. The defendant was not required to give notice to the plaintiffs of the extraordinary circumstances which existed, especially when, as is averred in the plea, they knew, or with reasonable diligence could have known, of such circumstances. The special promise of the defendant to the plaintiffs to furnish them with the necessary cars, alleged in the second count of the declaration, cannot be enforced under the circumstances stated in the plea as against the public interest. We are of the opinion that error was committed in sustaining the demurrer to this eighth plea, and that for this reason the judgment will have to be reversed.

Having reached this conclusion, it becomes unnecessary to consider any of the assignments based upon the proceedings before the referee. Upon another trial, the issues will probably not be the same.

Judgment reversed.

WHITFIELD, C. J., and COCKRELL, J., concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.