NOAH PADGETT, *Plaintiff in error*, v. THE STATE OF
FLORIDA, *Defendant in Error*.

1. While plaintiffs in error in criminal cases have the option of proceeding under Special Rules 1, 2 ,and 3, adopted on the 2nd day of March, 1905, or Rule 103, adopted at the April Term, 1873, in the preparation of their transcripts and bills of exceptions, the better and safer procedure is for such plaintiffs in error to have their transcripts prepared and their bill of exceptions made up, settled and certified in accordance with the provisions of such Rule 103. Whichever procedure is adopted, it is advisable to follow closely the directions given in the respective rules.

2. It is of the utmost importance that the transcripts and briefs should be clearly and correctly typewritten or printed, so that the same may be easily read, without unduly taxing the eyes of the members of the appellate court.

3. In the preparation of transcripts, redundancies and repetitions should be avoided, as the copying or setting forth papers or proceedings more than once therein, when the same is not required, increases the costs unnecessarily and causes the expenditure of additional time by the members of the appellate court which could be more advantageously employed.

4. The general rule seems to be concerning motions that, unless the moving party is entitled, as a matter of right, to the relief demanded, it is not error to deny a motion which cannot be allowed substantially in the form in which it is presented.

5. A defendant in a criminal case is not entitled as a matter of right to be supplied with a list of the State's witnesses who are to testify against him. Neither is he entitled as a matter of right to have all the articles in the possession of the State, intended to be introduced in evidence against him, placed in the hands of the clerk or other officer of the court for inspection by the defendant or his counsel.

6. A party has no right to cross-examine a witness except as to facts and circumstances connected with matters testified about by the witness on his direct examination. If a party desires to enquire into other matters, he must make the witness his own. While this is true, a wide range should be allowed on the cross-examination of a witness when the questions propounded seek to elicit the motives, interest or animus of the witness as connected with the cause or the parties thereto, upon which matters he may be contradicted by other evidence. Likewise, considerable latitude should be permitted in the propounding of questions on cross-examination which seek to test the memory or credibility of the witness.

7. The extent and limits of the range of the cross-examination rest within the sound judicial discretion of the trial court, and an appellate court will not interfere with the exercise of such discretion, unless a clear abuse thereof is made to appear.

8. The trial Judge in his discretion may permit leading questions to be propounded to witnesses, and the exercise of this discretion is not reviewable by this court upon writ of error.

9. Where a defendant is found guilty of murder in the first degree, it becomes immaterial for an appellate court to consider the legal accuracy or technical correctness of charges defining or confined to lower degrees of murder or homicide, unless it is made to appear that such charges of which complaint is made could have caused the jury to have misinterpreted them to the injury of the accused.

10. In determining the correctness of charges and instructions, they should be considered as a whole; and, if as a whole, they are free from error, an assignment predicated on isolated paragraphs or portions, which, standing alone, might be misleading, must fail.

11. If a defendant wishes to avail himself of the omission of

the trial judge to more fully charge the jury upon any point in the case, he should specifically request the desired instruction.

12. The refusal of the trial court to grant a new trial for insufficiency of the evidence to sustain the verdict, or because the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the appellate court that it is wrong and unjust.

Writ of error to the Circuit Court for Taylor County.

The facts in the case are stated in the opinion of the court.

*Calhoun & Palmer, O. O. McCollum, J. N. Stripling* and *W. B. Davis,* for Plaintiff in Error;

*Park Trammell,* Attorney General, and *C. O. Andrews,* for the State.

SHACKLEFORD, J.—Noah Padgett was tried for and convicted of the crime of murder in the first degree and was sentenced to imprisonment for the term of his natural life, the jury having recommended him to the mercy of the court. From such judgment and sentence he seeks relief here by writ of error.

Before entering upon the consideration of the fifty-nine errors assigned we think it advisable to make certain comments as to the manner in which this judgment is presented to us for review.

First, We would call attention to our discussion in Seaboard Air Line Ry. v. Rentz & Little, 60 Fla. 429, 54 South. Rep. 13, as to the respective duties and relations of the members of the bench and bar and as to the neces-

sity for their co-operation in order that justice may be properly administered, the purpose for which courts of justice exist. Also see the authorities therein cited, and in the dissenting opinion of the writer hereof in White v. State, 59 Fla. 53, text 60, 52 South. Rep. 805, text 807. In these cases, as in Hoopes v. Crane, 56 Fla. 395, 47 South. Rep. 992, and in several other cases, we have expressed our strong disapproval of the practice of assigning a large number of errors and stated why such a course was reprehensible and wherein it tended to hinder, delay and make difficult the administration of justice.

As we have held in several cases, since the adoption of Special Rule 6, on the 2nd, day of March, 1905, plaintiffs in error in criminal and habeas corpus cases have the option of proceeding under Special Rules, 1, 2, and 3, adopted on such date, or rule 103, adopted at the April Term, 1873, of this court, in the preparation of their transcripts and bills of exceptions. We further held that these respective modes of procedure must not be blended, but one or the other must be selected and followed. See Clinton v. State, 53 Fla. 98, 43 South. Rep. 312, 12 Ann. Cas. 150; Albritton v. State, 54 Fla. 6, 44 South. Rep. 745; Stephens v. State, 54 Fla. 107, 44 South. Rep. 710; Hallbeck v. State, 57 Fla. 15, 49 South. Rep. 153. While such option may be exercised, we are of the opinion that it is the better and safer procedure for the plaintiff in error in a criminal case to have his transcript prepared and his bill of exceptions made up, settled and certified in accordance with the provisions of such Rule 103. Be this as it may, if such plaintiff in error elects to proceed under Special Rules, 1, 2, and 3, as the plaintiff in error in the instant case has done, he should comply carefully with all the requirements of such rules and closely follow the

Padgett v. State—Opinion of Court.

directions given therein. As we have repeatedly held, it is the duty of any party resorting to an appellate court to see that his transcript of record is properly prepared, in compliance with the rules of court and to make the errors complained of clearly to appear. See Clinton v. State, *supra,* and McKinnon v. Lewis, 60 Fla. 125, 53 South. Rep. 940, wherein prior decisions of this court will be found collected.

In the instant case, as in the case of Rentz v. Live Oak Bank, 61 Fla. 403, 55 South. Rep. 856, the plaintiff in error has seen fit to pursue a course of which we expressed our disapproval. In the prefatory or introductory portion of the bill of exceptions is set forth certain questions propounded to certain witnesses, with the objections interposed thereto, the rulings of the court thereon, and the exceptions noted to such rulings. The like course is also pursued with certain documentary evidence. After such preliminary proceedings in regard to the evidence, which cover 15 typewritten pages, then follow 7 typewritten pages of charges and instructions given or refused, upon which assignments are predicated, and then follows all the evidence given in the case, mostly in narrative form, covering more than 125 typewritten pages. As we said in the cited case, "The objection to this course is that we find it difficult, if not in some instances impossible, to tell at what stage of the trial, or under what circumstances, the testimony so objected to and admitted (or rejected) was proffered, although in passing upon the correctness of some of the rulings of the trial court, upon which assignments are based, it is important that this should be made to appear." It is readily apparent also that such a course imposes an additional and unnecessary burden upon the appellate court in the way of time and labor required in the attempt to properly .consider

and pass upon such assignments of error. This difficulty could not arise if the plaintiff in error had proceeded under Rule 103 and would not have arisen if the provisions of Special Rules 1, 2, and 3 had been complied with and the directions given therein followed.

We would also call attention to the desirability, not to say importance, of having the transcripts and briefs clearly and correctly typewritten or printed, so that they may be easily read, without unduly taxing the eyes of the members of this court.

Redundancies and repetitions in the transcript should also be avoided, as the copying or setting forth papers or proceedings more than once therein, when the same is not required, as was done in the instant case, increasing the costs unnecessarily and also causes the expenditure of additional time by the members of this court which could be more advantageously employed.

If the members of the bar who have occasion to bring judgments before this court for review will heed the foregoing suggestions and those contained in the cases cited, they will materially aid us in the disposition of the court business. As officers of the court they should render the members thereof, all possible assistance in properly discharging the duties imposed upon them.

We now proceed to the consideration of such of the assignments urged before us as, we think, merit treatment. As we have already intimated, some of the assignments are so presented as to be practically unintelligible to us. Such of the other assignments that we fail to discuss we have examined and found to be destitute of merit.

Prior to the beginning of the trial of the accused, he filed a motion to require the State Attorney to furnish him with "the names of all witnesses for the State, herein,

other than those appearing upon the back of the indict-
ment," and also to require "that all articles in the posses-
sion of the prosecuting atorney or witnesses for the State
intended to be used in evidence be placed in the hands
of the clerk of the court or some other officer of said
court, to be designated by the court, for inspection by the
defendant and his attorneys."

It is strenuously contended that the denial of this
motion constitutes reversible error. It may well be that
this motion is too broad in its scope and that the court
was justified in refusing it for that reason. The general
rule seems to be that, "unless the moving party is entitled,
as a matter of right, to the relief demanded, it is not
error to deny a motion which cannot be allowed sub-
stantially in the form in which it is presented." 28 Cyc.
17. Also see 14 Ency. of Pl. & Pr. 120. In line with this
general rule, we have repeatedly held that, "In both civil
actions and criminal prosecutions, a motion to strike out
the entire testimony of a witness should be denied, if
any part thereof is admissible for any purpose. The
motion should be confined specifically to the inadmissi-
ble portions; otherwise, it will be too broad." Lewis v.
State, 55 Fla. 54, 45 South. Rep. 998. But, independent
of its broadness, such motion was properly refused. It
was not requisite at common law that the names of the
witnesses examined before the grand jury should be en-
dorsed upon the indictment. It is purely a statutory mat-
ter. See 22 Cyc. 258, and 12 Cyc. 513. We have no such
statute, but it is customary to have this done, as is true
in several other jurisdictions. 10 Ency. of Pl. & Pr. 434.
Even in those jurisdictions having such statute, as a
general rule, it has been held to be merely directory. See
22 Cyc. 258, and authorities there cited, and our holding
in Hathaway v. State, 32 Fla. 56, 13 South. Rep. 592. But

be all this as it may, it would seem to be supported by the great weight of authority that "The prosecution is not confined to the list of witnesses examined before the grand jury, and whose names, it is usually provided by statute, must be indorsed on the indictment. The prosecution is not compelled to prove its case by the witnesses examined before the grand jury, but may examine any competent witness having knowledge of the facts. The matter rests in judicial discretion, and this discretion will be reviewed only for the purpose of ascertaining if the defendant was in fact surprised. Likewise it is within the discretion of the court to permit the prosecution to call and examine in rebuttal witnesses whose names are not on the indictment." 12 Cyc. 514. Also see the numerous authorities cited in the notes. We would also refer to the reasoning in State v. Abrahams, 6 Iowa, 117, 71 Amer. Dec. 399, and Logg v. The People, 92 Ill. 598. Baker v. State, 51 Fla. 1, 40 South. Rep. 673, is directly in point, wherein we held that "a defendant in a criminal case is not entitled to be supplied with a list of the State's witnesses who are to testify against him." Also see Mann v. State, 22 Fla. 600. Likewise, in Newton v. State, 21 Fla. 53, we have practically so disposed of the other ground of the motion, which sought to require the State to produce for inspection of the defendant, prior to the trial, all articles in the possession of the prosecution intended to be adduced in evidence against him. It is sufficient to say that a careful examination of the transcript, aided by the briefs of the respective counsel, fails to show any abuse of the discretion vested in the trial Judge, or that the defendant was surprised or harmed in any way by such ruling, consequently the two assignments based upon the denial of the motion must be held not to have been sustained.

Several assignments are based upon the sustaining of objections interposed by the State to certain questions propounded by the defendant to Maud Keen, a State witness, on cross-examination. No detailed discussion of these assignments seems to be called for. Such questions were violative of the well established rule that "A party has no right to cross-examine a witness except as to facts and circumstances connected with matters testified about on his direct examination. If her desires to enquire into other matters he must make the witness his own." Hampton v. State, 50 Fla. 55, 39 South. Rep. 421. See also Fields v. State, 46 Fla. 84, 35 South. Rep. 185; Schley v. State, 48 Fla. 53, 37 South. Rep. 518; Starke v. State, 49 Fla. 41, 37 South. Rep. 850; Gilbert v. State, 58 Fla. 50, 50 South. Rep. 535. While this is true we bear in mind that a wide range should be allowed on the cross-examination of a witness when the questions propounded seek to elicit the motives, interest or animus of the witness as connected with the cause or the parties thereto, upon which matters he may be contradicted by other evidence. Likewise, considerable latitude should be permitted in the propounding of questions on cross-examination which seek to test the memory or credibility of the witness. In addition to the authorities just cited, see also Pittman v. State, 51 Fla. 94, 41 South, Rep. 385, 8 L. R. A. (N. S.) 509; Vaughn v. State, 52 Fla. 122, 41 South. Rep. 881, Jenkins v State, 58 Fla. 62, 50 South. Rep. 582; Andrew v. State, 62 Fla. 10, 56 South. Rep. 681. The principle which should govern is well stated thus in 1 Thompson on Trials (2nd Ed.) Sec. 415: "The general rule, therefore, is that a cross-examination should be permitted as to all matters developed on the direct examination, and that great latitude should be allowed in conducting the same, the extent and limit of which, where no rule of law is

violated, rest in the sound *discretion* of the trial court."
We have held, in line with this principle, that, the con-
duct of the cross-examination generally and as to the
range which it shall be permitted to take rests in the
sound judicial discretion of the trial court. See the very
instructive case of Wallace v. State, 41 Fla. 547, 26 South.
Rep. 713, which has been cited and followed in numerous
subsequent decisions. As we have several times an-
nounced, courts of justice exist for the administration of
justice, and in the conduct of trials generally much must
be left to the discretion of the trial judge. Wilson v.
Johnson, 51 Fla. 370, 41 South. Rep. 395; Seaboard Air
Line R. Co. v. Scarborough, 52 Fla. 425, 42 South. Rep.
706; Adams v. State, 55 Fla. 1, 46 South, Rep. 152;
Atlantic Coast Line R. Co. v. Dees, 56 Fla. 127, 48 South.
Rep. 28; Malsby v. Gamble, 61 Fla. 310, 54 South. Rep.
766; Investment Co. v. Trueman, 63 Fla. 184, 57 South.
Rep. 663. We held in Adams v. State, *supra.* that "The
object of a trial is to approximate justice as nearly as
possible, and unless it appears that some injustice or
wrong has been done a defendant, this court will not in-
terfere with the action of a trial court." In Atlantic
Coast Line R. Co. v. Dees, *supra,* we quoted with approval
a paragraph from section 655 of Watson's Damages,
wherein it was said in effect that, as a general rule, in
matters which rest within the judicial discretion of the
trial court an appellate court will not interfere, except
where an abuse of such discretion is made to appear. We
think that is a salutary rule, which will conduce to the
administration of justice. It is sufficient for us to say, in
conclusion, as to these assignments that no material
errors of law or procedure have been made to appear, and
that we fail to find any abuse of the judicial discretion

in any of the rulings upon which the respective assignments are based.

What we have said in disposing of the foregoing assignments is alike applicable to practically all of the assignments predicated upon the sustaining of objections to questions propounded by the defendant to Robert Johnson and other State witnesses.

The defendant was indicted for the murder of Ollie Keen, and Robert Johnson and Harrison Padgett were jointly indicted with the defendant, charged with being present and aiding and abetting in such murder. On motion, the State obtained an order of severance, and the defendant was tried alone. When Robert Johnson, one of the co-defendants, was called as a witness by the prosecution and his examination begun by the State, the defendant on trial objected to the further examination of such witness on the ground "that the defendant had no notice that the State would undertake to use him as a witness and that the defendant has been taken by surprise." The overruling of such objection forms the basis for an assignment and the defendant insists that this constitutes reversible error. To this contention we cannot agree and would refer to what we said above in treating the first two assignments. We fail to find wherein the defendant was taken by surprise at the calling of this witness to testify against him. In view of other testimony adduced at the trial, it would seem that the defendant might well have expected and been prepared for this course. We are clear that no reversible error has been made to appear in the ruling of which complaint is made. The defendant would seem to have been afforded ample opportunity, not only for the purpose of cross-examining such witness, but for the purpose of rebutting his testimony, if he could. As a matter of fact, he was

subjected to a vigorous cross-examination, and an earnest attempt was made to rebut and contradict his testimony by other witnesses.

The defendant sought to elicit by questions propounded on the cross-examination of the witness, Robert Johnson, as he had previously sought to do on the cross-examination of the witness, Maud Keen, that such witnesses knew that the deceased, Ollie Keen, at the time that he was killed, was a fugitive from justice, that he had been "arrested on the charge of forgery before Judge Culpepper, and gave bond to appear at the next court, forfeited that bond and was dodging the sheriff," also that the witness, Johnson, knew that the deceased was under indictment in the Circuit Court "for firing shots at some cattle." We are clear that no error has been made to appear in the respective ruling of the court sustaining the objections to such questions and excluding the testimony so sought thereby to be elicited. What we have previously said as to the permissible scope of a cross-examination disposes adversely of these contentions of the defendant. We will add that there is no testimony in the transcript to the effect that the defendant, or either of his co-defendant, was trying to arrest the deceased at the time he was killed, or that they had any authority so to do, therefore the discussion by the defendant in his brief of the law as to who is authorized "to apprehend a person who has committed a felony and who is fleeing from justice," is academic in its nature, and the point is not presented to us for decision upon this writ of error. As a matter of fact the defendant himself testified in his own behalf concerning the matter as follows: "I never in my life attempted to arrest Ollie Keen either that morning or any other time

and I did not have a difficulty with him that morning and threatened to shoot him."

·· In view of what we have just said, it becomes unnecessary· to discuss the assignments based upon the exclusion by the trial judge of proffered evidence by the defendant, both parol and documentary, to the effect that the deceased had been arrested on the charge of forging a check, brought before the county judge and had given a bond for his appearance, which he had forfeited.

· We have repeatedly held that the trial judge in his discretion may permit leading questions to be propounded to witnesses, and that the exercise of this discretion is not reviewable by this court upon writ of error. Schley v. State, 48 Fla. 53, 37 South. Rep. 518.

We have also several times held that when a defendant is found guilty of murder in the first degree, it becomes immaterial for an appellate court to consider the legal accuracy or technical correctness of charges defining or confined to lower degrees of murder or homicide, unless it is made to appear that such charges of which complaint is made could have caused the jury to have misinterpreted them to the injury of the accused. See Marlow v. State, 49 Fla. 7, 38 South. Rep. 653; Jordan v. State, 50 Fla. 94, 39 South. Rep. 155; Albritton v. State, 54 Fla. 6, 44 South. Rep. 745. No such showing in the instant case has been made concerning such charges upon which certain assignments are predicted, consequently such assignments must fail.

Several assignments are based upon certain portions of the general charge of the court. It is settled law in this court that. in determining the correctness of charges and instructions, they should be considered as a whole; and, if as a whole, they are free from error, an assign-

26—Vol. 64.

ment predicated on isolated paragraphs or portions, which, standing alone, might be misleading, must fail. Davis v. State, 54 Fla. 34, 44 South. Rep. 757; Lewis v. State, 55 Fla. 54, 45 South. Rep. 998; Pensacola Electric Co. v. Bissett, 59 Fla. 360, 52 South. Rep. 367. A construction of the entire charge fails to show wherein any reversible error was committed therein.

No instructions were requested by the defendant. If the defendant wished to avail himself of the omission of the trial judge to more fully charge the jury upon any point in the case, he should have specifically requested the desired instruction. Rawlins v. State, 40 Fla. 155, 24 South. Rep. 65, and Carr v. State, 45 Fla. 11, 34 South. Rep. 892.

The only remaining question meriting consideration is as to the sufficiency of the evidence to support the verdict. A detailed discussion of the evidence adduced would be profitless. The trial judge refused the motion for a new trial, which questioned the sufficiency of the evidence, and we must refuse to disturb his ruling. As we have held in a long line of decisions, "the refusal of the trial court to grant a new trial for insufficiency of the evidence to sustain the verdict, or because the verdict is contrary to the evidence, will not be reversed unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the appellate court that it is wrong and unjust." Williams v. State, 58 Fla. 138, 50 South. Rep. 749.

No reversible error having been made to appear, the judgment must be affirmed.

WHITFIELD, C. J., and TAYLOR, COCKRELL and HOCKER, J. J., concur.