J. M. ELLIOTT, JR., AND CLAUDE E. CONNER, *Appellants*, v. RUBIE C. CONNER, BY HER NEXT FRIEND, J. D. YOUNG, *Appellee.*

1. Under the Statutes of this State a mortgagee acquires only a specific lien upon the property of the mortgagor that is covered by the mortgage, and an instrument of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, which upon its face conveys title to property, may be subject to the provisions of the statute that it "shall be deemed and held a mortgage," if by extrinsic facts the statute is shown to apply; and in cases of doubt the instrument may when justice requires it be held to be in law a mortgage.

2. The relations existing between the parties at the time of its execution may be considered in determining whether a deed of conveyance of land absolute on its face was intended to operate as a mortgage to secure the payment of a debt.

3. If when an absolute conveyance of property is made it is in legal effect a mortgage it remains a mortgage.

4. Where a conveyance of property is absolute on its face, the burden of showing that it was when executed intended to be a mortgage to secure the payment of money, is upon the grantor.

5. The conduct of the parties and the circumstances under which the instrument was executed may be shown in evidence as bearing upon the intent and purpose of the parties to the transaction. The mere secret intention of either party as to the purpose of the instrument will not control.

6. If from all the facts and circumstances of the case it appears that the real purpose of the parties to an absolute conveyance of property was to secure the payment of money then due, and not the actual extinguishment of the debt, the conveyance will be regarded as a mortgage. In such a case the mortgagee may foreclose, or the mortgagor may redeem.

7. When an unascertained debt exists which is not clearly extinguished, and the value of property conveyed is considerably greater than the probable total debt, and there is evidence that the grantor intended a conveyance to be merely a security for the debt, and the attending circumstances were such that the grantee must have understood the conveyance was intended by the grantor as security for the debt, the instrument may be held a mortgage, especially when by so doing justice to both parties will be best subserved.

8. Where lands of the wife that had been conveyed by her are sought to be redeemed by her upon allegations that the conveyance was intended to be a mortgage, the intent with which the instrument of conveyance was executed by the grantor and received by the grantee should be ascertained and must control in adjudicating the rights of the parties

9. While competent parties should be held to the consequences of acts deliberately taken by them, such as the execution of deeds affecting the title to real estate, yet the circumstances

of the parties and the conditions under which deeds are exe-
cuted should be considered in determining the effect the par-
ties intended the deeds to have under the laws of the State
where the lands are located.

10.  Where in order to relieve her husband of embarrassment a
     married woman executes to her husband's creditors a con-
     veyance of her separate property to secure the payment of the
     husband's indebtedness, and the circumstances are such that
     the creditor must have known that was the purpose of the
     wife, the conveyance will be held to be a mortgage and the
     property may be redeemed by the wife upon the payment of
     the indebtedness.

Appealed from the Circuit Court for Marion Count.

The facts in the case are stated in the opinion of the
court.

*Hampton & Hampton,* and *Blount & Blount & Carter,*
for Appellants;

*Hocker & Duval,* for Appellee.

WHITFIELD, C. J.—A bill was filed March 31st, 1909,
by the appellee against the appellants to redeem lands
of Mrs. Rubie C. Conner in the State of Florida, alleged
to have been conveyed by her and her husband to J. M.
Elliott, Jr., for the purpose of securing an indebtedness
of Claude E. Conner, husband of Rubie C. Conner, to J.
M. Elliott, Jr.  An order sustaining a demurrer to the
bill of complaint as amended was reversed.  Conner v.
Conner, 59 Fla. 467, 52 South. Rep. 727.  When the cause
was finally heard on the pleadings and evidence, the chan-
cellor filed in writing his findings that the equities of
the cause are with the complainant and that the cause

would be referred to a competent master to state an account between C. E. Conner and J. M. Elliott, Jr. An appeal was taken from this finding which is apparently regarded by all parties as a decree.

The question to be determined is whether on the evidence and under the statutes of this State the conveyance of the property is in fact and in law merely a mortgage to secure the payment of money.

Sections 2494 and 2495 of the General Statutes are as follows:

"All deeds of conveyance, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages."

"A mortgage shall be held to be a specific lien on the property therein described, and not a conveyance of the legal title or of the right of possession."

Under these statutes a mortgages acquires only a specific lien upon the property of the mortgagor that is covered by the mortgage, and an "instrument of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money," which upon its face conveys title to property, may be subject to the provisions of the statute that it "shall be deemed and held a mortgage," if by extrinsic facts the statute is shown to apply; and in cases of doubt the instrument may when justice re-

quires it be held to be in law a mortgage. The relations existing between the parties at the time of its execution may be considered in determining whether a deed of conveyance of land absolute on its face was intended to operate as a mortgage to secure the payment of a debt. Hull v. Burr, 58 Fla. 432, 50 South. Rep. 754; DeBartlett v. Wilson, 52 Fla. 497, 42 South. Rep. 189; Conner v. Conner, 59 Fla. 467, 52 South. Rep. 727.

An absolute conveyance of property is in equity a mortgage if when made it was intended by the parties to be a security for the payment of money. If when an absolute conveyance of property is made it is in legal effect a mortgage it remains a mortgage. Where a conveyance of property is absolute on its face, the burden of showing that it was when executed intended to be a mortgage to secure the payment of money is upon the grantor. The conduct of the parties and the circumstances under which the instrument was executed may be shown in evidence as bearing upon the intent and purpose of the parties to the transaction. The mere secret intention of either party as to the purpose of the instrument will not control. But if from all the facts and circumstances of the case it appears that the real purpose of the parties to an absolute conveyance of property was to secure the payment of money then due, and not the actual extinguishment of the debt, the conveyance will be regarded as a mortgage. In such a case the mortgagee may foreclose or the mortgagor may redeem. Where there is an existing debt which is not certainly extinguished by an absolute conveyance of property, and the amount of the debt is not fully known or ascertained, and the value of the property when conveyed was considerably greater than the probable total indebtedness would be when

definitely ascertained, and there is evidence that the grantor intended the conveyance as a security for the debt and not as an absolute sale and there was no proposition for the sale of the property, but the attending circumstances were such that the grantee must have understood the conveyance was intended by the grantor as security for the debt the instrument may be held a mortgage, especially when by so doing justice to both parties will be best subserved. See 1 Jones on Mortgages (6th Ed.), Sec. 265, *et seq.*

Where lands of the wife that had been conveyed by her are sought to be redeemed by her upon allegations that the conveyance was intended to be a mortgage, the intent with which the instrument of conveyance was executed by the grantor and received by the grantee should be ascertained and must control in adjudicating the rights of the parties. If the deed of conveyance was delivered by the grantor and received by the grantee with the understanding that the wife intended it only as security for a debt of the husband due to the grantee, then it is a mortgage, no matter what contrary intent may have existed between the husband and his creditor, the grantee, prior to the delivery of the instrument. See Davis v. Brewster, 59 Tex. 93.

It appears that Claude E. Connor was employed by J. M. Elliott, Jr., as a bookkeeper and confidential assistant in Alabama; that Connor used funds of his employer without authority to a large amount. the exact or even approximate sum not being then known; that Rubie C. Connor, wife of Claude E. Connor, owned certain town and country property in Florida, including the home in which the Connors lived before and after the transactions herein stated; that with a view to reim-

burse Elliott for his money, that Claude E. Connor had misappropriated, Mrs. Connor joined by her husband on March 23rd, 1908, conveyed to Elliott the lands in Florida, the recited consideration being "the sum of five thousand dollars and other valuable considerations;" that on March 23rd, 1908, a written lease of the same property from Elliott to the Connors was signed by Claude E. Connor and his wife; that this lease was subsequently signed in Florida by Elliott; that on March 23rd, 1908, Elliott signed an instrument in writing stating that the consideration for the deeds is the absolute payment by Rubie C. Connor of the present indebtedness of her husband to Elliott, and that at any time before December 31st, 1908, upon the payment to Elliott by Mrs. Connor of an amount equal to C. E. Connor's present indebtedness to Elliott with interest from date, Elliott agreed "to sell and convey by quit claim deed to Mrs. Rubie C. Connor all the said lands described in her said deeds" to Elliott, the instrument signed by Elliott stating that it is understood that the deeds "are not mortgages, but are absolute deeds, giving Mrs. Rubie C. Connor the right to buy back said lands on the terms and conditions expressed herein;" that on March 28th, 1908, to correct an error in the conveyance on March 23rd, as to the description of some of the property, the Connors executed to Elliott another deed of conveyance covering the property, the recited consideration being "the sum of one dollar;" that in making the conveyance to Elliott the insurance policies on the Connor residence located upon a part of the property conveyed were assigned to Elliott, and when the house was burned the insurance money was collected for Elliott; that Elliott paid the taxes on the property for the years 1907 and 1908; that the

Connors returned to Florida after executing the deed of conveyance and the lease on March 23rd, 1908, and lived in the house till it was burned; that no rent was paid, though it was demanded; that other transactions and communications occurred between C. E. Connor and Elliott relative to an adjustment of their affairs; and finally the suit to redeem the lands upon payment of the indebtedness was instituted by Mrs. Rubie C. Connor by her next friend, J. D. Young.

On March 23rd, 1908, when the deed of conveyance was executed by Mrs. Connor, the exact amount of Mr. Connor's indebtedness to Elliott was not known, and the value of the property conveyed to Elliott by Mrs. Connor was not definitely known. Elliott testifies that C. E. Connor acknowledged his indebtedness and offered to have the property conveyed to Elliott "in payment of it, as far as it would go ——————— in payment of this debt whatever it is," and that Elliott replied. "all right, I would accept the property for the amount; I would take it in absolute payment of the debt, it did not matter how much it was." It does not appear that in this conversation Connor was acting for his wife, who was the owner of the property. C. E. Connor testified that the conveyance was made "to cover any indebtedness, if any, that might be found to be due by himself to J. M. Elliott, Jr.; that the conveyance was intended to secure Elliott in the payment of certain moneys." There is nothing to indicate that C. E. Connor was authorized to represent his wife when he was promising a conveyance of the property. She testifies without contradiction that her husband told her the deed was to secure this debt and that she had no thought of selling the property.

J. H. Harden, an agent for Elliott, who says he was present when C. E. Connor and Elliott had the conver sation relative to "the giving of the deed to the property prior to leading up to the execution of the instrument," testified that there was no agreement or understanding that the deed was to be a security for the indebtedness; but the understanding was that it would be an "absolute deed to the property." Harden also testified that when the deed were executed in the office of a notary, he, took Mrs. Connor aside and asked her if she fully understood the papers she was signing, and as she made no reply, he asked her if she understood she was signing a lease of the property to enter upon it as tenant of Elliott, to which "she says yes." Further testifying, Harden, who represented Elliott, says C. E. Connor privately objected to conveying the property and "he then asked for a paper showing that he would have the privilege to buy back this property." At Harden's suggestion, Elliott signed the agreement above mentioned "to sell and convey by quit claim deed" to Mrs. Connor. C. E. Connor testified that Harden voluntarily got for him the agreement from Elliott to resell the property before December 31st, 1908. Harden's testimony as to what C. E. Connor said to him and Elliott does not show that C. E. Connor was representing his wife. As Mrs. Connor owned the property her intention is an essential element in the case. Mrs. Rubie C. Connor testified apparently without objection that immediately before she signed the deeds her husband told her that they "were made to secure certain debts owed by the husband to Mr. Elliott;' and that she had no thought of selling her property in Florida to Elliott. Other testimony of Mrs. Connor was objected to before the master,

but the objections were not ruled upon by the court. There is at least some uncontroverted evidence that Mrs. Connor intended only to secure the payment of the sum of money that may be found upon investigation ot be due from her husband to Elliott, and the circumstances clearly indicate that Elliott should have known of Mrs. Connor's purpose. Mrs. Connor further testified that at the time she executed the deeds constituting the conveyance and the lease, Harden did not take her aside and tell her of the lease and explain why she was to pay rent to Elliott, and that Harden did not tell her "that these were absolute deeds," and that the lease made her and her husband tenants to Elliott. This contradicted Harden's testimony on this point. The notary who took the acknowledgements testified: "I asked Mrs. Rubie C. Connor if she knew what the paper was and she said that she did. From her answer I was satisfied that she was fully advised of the contents, force and effect of the paper or I would have read it to her." This does not indicate that Mrs. Connor intended to execute an absolute conveyance of the property as distinguished from the mortgage effect given by law to the instrument under conditions then well known to her and prompting her action in executing the papers. Instructions given by the grantee or his agents as to the form of the instruments to be drawn do not affect the intent of the grantor or the legal status of the instrument under the law.

There is uncontradicted evidence that at the execution of the deeds the lands were worth considerably more than any amount supposed to have been improperly taken from Elliott by Connor. Mrs. Connor's testimony as to her purpose is not inconsistent with the execution of the deeds under the existing circumstances. Under

27—Vol. 63

the constitution the separate property of a married woman may be made liable for the debts of her husband with "her consent given by some instrument in writing executed according to the law respecting conveyances by married women."

While competent parties should be held to the consequences of acts deliberately taken by them, such as the execution of deeds affecting the title to real estate, yet the circumstances of the parties and the conditions under which deeds are executed should be considered in determining the effect of the parties intended the deeds to have under the laws of the State where the lands are located. Should parties laboring under no disabilities and dealing with others on an equal basis of circumstances and competency, deliberately and designedly execute a conveyance of real estate pursuant to an agreement duly made to sell and convey the property, and afterwards attempt to enforce a recovery of the property upon a pretended right to redeem it, an estoppel may be invoked. But the principle of estoppel should not be applied where a married woman, in order to relieve her husband from the stress of inability, to pay a large but not definitely ascertained sum of money he had unlawfully taken from another, does not undertake or consent to sell her property to her husband's creditors, but executes a deed of conveyance of her own real estate in Florida of probably larger value than the indebtedness, to the persons whose money her husband had wrongfully appropriated, and also executes a lease of the same property to herself and the husband as tenants to the grantee in the conveyance, when she is told by the husband that the deeds are to secure his debts to the grantee, as yet undetermind in amount, and there is evidence that her

intention was not to sell her property, but to secure her husband's indebtedness to her grantee, and the circumstances are such that the grandtee reasonably should have known of the grantor's intention, and when the statutes of Florida provide that all deeds of conveyance or other instruments of writing conveying or selling lands made for the purpose of securing the payment of money shall be deemed and held mortgages and that such mortgages are merely liens and not a conveyance of the title or right of possession. There was no proposition to sell or to buy the property, but there was a necessity to make good Elliott's losses, and obviously from the circumstances attending the transaction Elliott must have known that the conveyance was by the grantor intended to secure and not to pay the debt due Elliott by the grantor's husband.

The agreement signed by Elliott on the date the deed was executed to the effect that he would sell and convey by quit claim deed to Mrs. Connor all the lands described in her deed to Elliott upon the payment to Elliott of an amount equal to C. E. Connor's indebtedness to Elliott, indicates the existence of a debt and that Elliott's purpose was to secure the future payment of the amount due him; and, notwithstanding the recitation in the agreement that the consideration of the deeds is the absolute payment of the indebtedness and the statement in the agreement that it was understood that the deeds executed by Mrs. Connor are not mortgages, but "are absolute deeds," the agreement does not in view of the facts and circumstances attending the execution of the deeds by Mrs. Connor preclude her from her right to redeem her own lands conveyed for the purpose of securing the

payment of her husband's indebtedness to her grantee, there being evidence, consistent with the surrounding circumstances upon which the chancellor was warranted in finding that such was the purpose of the deeds executed by the grantor married woman and that Elliott must have known of Mrs. Connor's real purpose. The execution of the lease by the Connors does not under the circumstances establish the character of the conveyance as being a sale of the property rather than as a mortgage, even though as mortgagors they were entitled to remain in possession till foreclosure, since the stress imposed by the unlawful taking by Connor of Elliott's money put the Connors at a disadvantage in their dealings with Elliott, and it appears that Mrs. Connor supposed she was giving a mortgage. The consideration stated in the conveyance does not indicate the cancellation of a debt, but it indicates an uncertain amount which is an attribute of a mortgage.

As the deed of conveyance executed by Mrs. Connor should under the law and in view of the circumstances in evidence be deemed and held to have been a mortgage when it was executed it remains a mortgage, and is not affected by subsequent transactions between C. E. Connor and Elliott or their representatives.

If there be a doubt as to the real purpose for which the deed was executed by Mrs. Connor, and therefore uncertainty as to whether it is a conveyance or a mortgage, the instrument under the circumstances of this case should pursuant to the statute be deemed and held a mortgage, since the payment of all of C. E. Connor's indebtedness to Elliott would apparently be complete justice to Elliott, and Mrs. Connor should have the bene-

fit of her own property after the indebtedness she desired to secure is paid in full.

The decree appealed from is affirmed.

TAYLOR, COCKRELL and HOCKER, J. J., concur. SHACKLE-FORD, J., did not take part.