DAVID F. MITCHELL, *Appellant, v.* HARRY MASON, *Appellee.*

Opinion Filed March 4, 1913.

1. Members of the bar should never allow their zeal in watching over and protecting the interests of their clients, which

Mitchell v. Mason—Syllabus.

in itself is most commendable, to cause them to lose sight of the fact that they are officers of the court and that as such officers they owe certain duties to the court. They should strive to render the members of both the trial and appellate courts all possible assistance in discharging their arduous duties and should be careful not to impose unnecessary burdens upon them.

2. In the preparation of transcripts, redundancies and repetitions should be avoided, as the copying or setting forth papers or proceedings more than once therein, when the same is not required, increases the costs unnecessarily and causes the expenditure of additional time by the members of the appellate court which could be more advantageously employed.

3. The practice of assigning a large number of errors is reprehensible, as it tends to hinder, delay and make difficult the administration of justice—the purpose for which courts of justice exist. That any one of the Circuit Judges in this State would commit one hundred and eight separate and distinct errors in the trial of a cause is rather a violent presumption, and, even if such should be the case, it would not be necessary to assign every one of such errors in order to secure a reversal of the judgment or decree, as the case may be, by an appellate court.

4. In passing upon a demurrer, which is addressed to the entire bill, only such grounds of the demurrer as are applicable to the whole bill are properly before the court for consideration.

5. A demurrer which is addressed to the entire bill must be treated as a general demurrer and should be overruled if there is any equity in the allegations of the bill, even though there are grounds of the demurrer which might prevail if the same were incorporated in a special demurrer, which was directed to the vulnerable parts of the bill.

6. The practice of filing a large number of objections and exceptions to a Master's report is disapproved, as it is unfair

14—Vol. 65

to the trial judge in that it casts an enormous and unnecessary burden upon him. It is almost inconceivable that any necessity could exist for filing objections to a master's report which cover 75 typewritten pages, and, in addition thereto, for filing 431 exceptions to such report, which cover 114 typewritten pages. In such a caes the trial Judge might well refuse to pass upon any of the objections or exceptions until they had been reduced to a reasonable number.

7. In framing assignments of error based upon the sustaining of exceptions to a master's report, there is no occasion to frame a separate assignment as to the sustaining of each ground of exception, especially when the trial judge did not undertake to rule upon each ground but simply sustained the exception. It is sufficient to frame an assignment upon each of the exceptions sustained, review of which is sought.

8. In a suit in equity, as in an action at law, the issues to be tried and determined are made by the pleadings, and all pleadings should be characterized with certainty, clearness and conciseness, in order that the point or points in controversy be evolved and distinctly presented for decision, the object of all judicial proceedings being to ascertain and decide the disputed points.

9  It is an established rule of chancery practice, and of pleading and practice generally, that the *allegata* and *probata* must correspond. However full and convincing may be the proof as to any essential fact, unless the fact is averred, proof alone is insufficient. All the evidence offered in a case should correspond with the allegations and be confined to the issues.

10. When a replication is filed to an answer it thereby puts in issue all the matters alleged in the bill and not admitted in the answer, as well as those matters contained in the answer which are not responsive to the bill.

11. When the answer concludes with the usual general denial found in such a pleading, it is sufficient to make and issue on material allegations in the bill not admitted in the answer and to which no especial response is made. Such statements

can not be taken as admitted to be true, but must be proved by at least a preponderance of the testimony.

12. Matters set up in the answer which are not responsive to the bill, as matters set up by way of avoidance, must be proved by the defendant, and the burden is upon him to establish such matters by a preponderance of the testimony.

13 A sworn answer denying the allegations in the bill which are essential to sustain the case of complainant and entitle him to relief is evidence in favor of defendant and conclusive, unless overcome by the testimony of two witnesses, or of one witness corroborated by other circumstances which are of greater probative weight than the answer, provided that the oath to the answer has not been waived and the answer is directly and positively responsive to the material allegations of the bill.

14. In a suit in equity for the enforcement of a mortgage lien, a defendant who admits in his answer the allegation of the bill that a certain deed absolute on its face was executed by him, but seeks to avoid the force and effect of such instrument by claiming that it was in reality intended as a mortgage, this, being new matter not responsive to the allegations of the bill, must be established by such defendant by a preponderance of the testimony, the burden of proof being cast by the law upon him.

15. Where the trial court has found against the contention of the defendant that a deed, absolute on its face, was intended to operate as a mortgage, upon an appeal by the defendant from such decree, the onus rests upon the appellant not only to rebut the presumption that the title as appearing in the written instrument is in perfect accordance with the intention of the parties, but he must also establish to the satisfaction of the appellate court that the holding or decree of the court below adverse to his contention is erroneous.

16. Affirmative relief cannot be decreed in favor of a defendant, except in matters of accounting, upon the facts stated in in the answer. Where a defendant seeks affirmative relief

he should file a cross-bill, and if he seeks an accounting or any relief from one who is not a party to the proceedings he should make such person one of the defendants to the cross bill.

17. With the wisdom or folly of contracts which persons who are *sui juris* may make the courts have no concern.

Appealed from the Circuit Court for Duval County.

Decree affirmed.

*D. C. Campbell,* for Appellant;

*Alex. St. Clair-Abrams,* for Appellee.

SHACKLEFORD, C. J.—Mr. Chief Justice WHITE once tersely said to the writer that "judicial duty means simply an infinite capacity for taking pains and great patience." Even so, as Mr. Justice COBB said in Kelly v. Strouse, 116 Ga. 872, text 899, 43 S. E. Rep. 280, "Courts of last resort are composed of human beings, and are liable to make mistakes both in rulings and reasoning, and unguarded and ill-considered expressions are as apt to emanate from them as from others." In quoting this statement in his dissenting opinion in White v. State, 59 Fla. 53, text 60, 52 South. Rep. 805, text 807, the writer hereof added that this must necessarily follow from the fact that they are human beings, therefore not infallible, but subject to like infirmities and short-comings as other men. This was followed in Seaboard Air Line Ry. v. Rentz, 60 Fla. 429, text 437, 54 South. Rep. 13, text 16, with the further comment that the judges both of the *nisi prius* and appellate courts, being mortals, should not be expected to have greater capacity for work or powers of endurance than members of the bar. Judges have their limitations, even though patience, forbearance and good

nature are supposed to be virtues which peculiarly belong to them. We are induced to make these observations because in the instant case we are confronted with a transcript of the record which contains 2,277 typewritten pages, which, as Caesar says of Gaul,.is divided into three parts. Strickly speaking, we should say five parts, as there are two amendments to the transcript, containing matters inadvertently omitted. We are also favored with briefs by the respective parties, containing in the aggregate 517 typewritten pages. We mention these facts in order to show something of the labor which has devolved upon us and the amount of time which the mere physical act of reading these documents must necessarily require. We would again call the attention of the members of the bar to what we said in Seaboard Air Line Ry. v. Rentz, *supra*, as to the object of judicial procedings, and, though in that case we were speaking of the pleadings in an action at law, much of what is said applies with equal force to a suit in equity. We would especially like to impress upon them what we said as to the respective duties and relations of the members of the bench and bar and as to the necessity for their co-operation in order that justice may be administered—the purpose for which courts of justice exist. Counsel should never allow their zeal in watching over and protecting the interests of their clients, which in itself is most commendable, to cause them to lose sight of the fact that they are officers of the court and that as such officers they owe certain duties to the court. They should strive to render the members of both the *nisi prius* and appellate courts all possible assistance in discharging their arduous duties and should be careful not to impose unnecessary burdens upon them. We would earnestly insist that the members of the bar heed the admonitions and suggestions con-

tained in the cited case, as by so doing they will materially aid the courts in the disposition of business. We would also call attention to what we said in Padgett v. State, 64 Fla. 389, 59 South. Rep. 946, as to the proper preparation of transcripts and briefs, especially as to the avoidance or redundancies and repetitions in the transcript, which we find characterizes the instant case, as was true of the cited case.

As we said in Atlantic Coast Line R. Co. v. Whitney, decided here at the present term, "Again and again we have expressed our disapproval and condemned the practice of assigning a large number of errors and stated why such a course was reprehensible and wherein it tended to hinder, delay and make difficult the administration of justice." See the decisions of this court there cited. In Hoopes v. Crane, 56 Fla. 395, 47 South. Rep. 992, we said, "That any one of the Circuit Judges in this State would commit sixty-one separate and distinct errors in the trial of a cause is rather a violent presumption, to say the least of it. Even if such should be the case, it would hardly be necessary to assign every one of such errors in order to secure a reversal from this court." Yet in the instant case the appellant would have us believe that 108 errors were committed, which, if true, is most remarkable.

We have read the voluminous transcript and briefs and have considered the assignments which have been urged before us, but we find it necessary for a proper disposition of the case to treat very few of them. Our experience has been that as a rule only a few points are presented on any appeal or writ of error that are really necessary to be determined. It is safer and better for an appellate court to confine itself to such vital points. Mr. Justice HOLMES, in a memorial address upon his colleague, the late Chief Justice FIELD, of the Massachusetts Supreme

Court, said that "It was hard for him to neglect the possibilities of a side alley, however likely it might be to turn out a *cul de sac.* He wanted to know where it led before he passed it by." After stating that "if we had eternity ahead this would be right and even necessary," Mr. Justice HOLMES proceeds as follows: "But as life has but a short number of working hours, we have to choose at our peril; we have to act on the presumptions afforded by our present knowledge as to what paths are most likely to lead to desired goals. If we investigate Mohammedanism, or Spiritualism, or whether Bacon wrote Shakespeare, we have so much less time for philosophy, or church, or literature at large. So in deciding a question of law, one has to consider this question of time. One has to try to strike the jugular and let the rest go." He adds that as time went on Chief Justice FIELD "gradually learned to omit," a most important but exceedingly difficult lesson to learn. Robert Louis Stevenson has well said that to omit is the one art of literature, stating that if he knew how to omit, he should ask no other knowledge. Many cases are presented to us for decision, each one of which is entitled to its fair share of time and consideration, so the better course for us to pursue is "to try to strike the jugular" in each one "and let the rest go." This is what we have tried to do in the instant case.

The litigation between the appellant and the appellee has been of quite a protracted nature. Several phases of it have previously found their way to this court. See Mitchell v. Mason, 61 Fla. 338, and 692, 54 South. Rep. 863, 55 South. Rep. 387, and Mitchell v. Mason, 63 Fla. 538, 57 South. Rep. 604. The appellee in the instant case filed his original bill against the heirs of James K. Cogswell, deceased, and the appellant for the enforcement of a mortgage lien upon certain described real estate, com-

monly known as "Villa Alexandria," and certain described personal property in the dwelling house situated thereon. Very briefly stated, the bill alleges that the mortgage in question was executed by James K. Cogswell and wife to Joseph R. Parrott to secure the payment of certain promissory notes to the amount of $24,000.00, executed by Cogswell to the order of Parrott, for the purchase price of such mortgaged property, and that such mortgage and notes had been transferred and assigned by Parrott for a good and valuable consideration to the appellee. We copy the following paragraph, which is the only one therein relating to and directly affecting the appellant:

"And further complaining your orator says that he is informed and believes that the defendant David F. Mitchell claims some interest in the mortgaged property, but of what nature or character your orator is not informed. but makes the said David F. Mitchell a party to this foreclosure suit for the purpose of ascertaining the nature and character of his alleged or interest or claim."

On the representation to the court by the appellee that he had been appointed administrator of the Cogswell's estate, John W. Dodge was appointed administrator *ad litem* to represent and defend the interests of such estate, and R. D. Knight was appointed guardian *ad litem* for one of Cogswell's heirs, who had been made a defendant and who was shown to be under the age of 21 years. Such administrator and guardian *ad litem* each answered the bill and decrees *pro confesso* were entered against all of the other defendants, with the exception of the appellant. A final decree was rendered in favor of the complainant, who is the appellee here, and against all of the defendants, from which decree David F. Mitchell entered his appeal and joined with him therein all of his co-

defendants. Afterwards Mitchell applied to and obtained from this court a severance, and he is now prosecuting this appeal alone and is the only defendant who is questioning the correctness of such final decree. The complainant filed an amendment to his bill, which, in order to make this opinion the more readily intelligible, we think it well to set forth. It is as follows:

"Your orator, by leave of the court amends his bill of complaint in the above entitled cause and alleges that in the year 1904, on the first day of August, the defendant David F. Mitchell and his wife executed a deed absolute on its face to Joseph R. Parrott to the property herein described, which said deed was duly recorded in the office of the Clerk of the Circuit Court of Duval County, Florida, and on the 25th day of March, 1908, the said Joseph R. Parrott and his wife executed a deed to said property to James K. Cogswell, absolute on its face, which said deed was duly recorded in the office of the Clerk of the Circuit Court of Duval County, Fla., and the said James K. Cogswell and his wife executed a mortgage to Joseph R. Parrott as hereinbefore set forth.

And your orator further amending this bill of complaint by leave of the court says that since purchasing the promissory notes and mortgage he has been informed and believes that the defendant, David F. Mitchell, claims that prior to the execution of the mortgage by James K. Cogswell the mortgaged property was held in trust for him by Joseph R. Parrott to secure the payment of a mortgage executed by the defendant, David F. Mitchell to George D. Huling, and that the deed executed by Joseph R. Parrott to James K. Cogswell, was simply an assignment of the mortgage to the said James K. Cogswell and that the said James K. Cogswell held the deed executed by him by

Joseph R. Parrott in trust for him, the said David F. Mitchell.

And your orator is also informed that the said David F. Mitchell claims that he is entitled to the equity of redemption in said property and that he further claims that under a contract and agreement with the said James K. Cogswell he was entitled to the first right to purchase said property.

And your orator says that he is informed and believes that all of said claims are unfounded and untrue and that said property was sold to Joseph R. Parrott absolutely and by the said Joseph R. Parrott sold absolutely to the said James K. Cogswell, and that the said James K. Cogswell took the deed absolutely in his own right and executed the mortgage to Joseph R. Parrott to secure the payment of the purchase money thereof.

And your orator further alleges that before purchasing the mortgage and notes from the said Joseph R. Parrott he caused the title to the said property to be examined by the Hon. William B. Young, an attorney at law, and was advised by him that the said title was good and that the mortgage and notes were good and valid, and that he purchased said mortgage and notes absolutely, without knowledge or notice of any equities existing between the said Joseph R. Parrott and David F. Mitchell, and without knowledge or notice of any equities existing between the said James K. Cogswell and David F. Mitchell, but purchased said mortgage and notes for a valuable consideration without notice. And your orator says that at the time of the purchase of said mortgage and notes there was never recorded and to this day there has never been recorded in the office of the Clerk of the Circuit Court of Duval County, Florida, any deed or instrument of writing showing any trust whatsoever in said property in

favor of the defendant, David F. Mitchell, from the said Joseph R. Parrott or the said James K. Cogswell, to put your orator upon inquiry in any manner or form, and your orator was never advised nor informed by any person whatsoever of any claims by the said David F. Mitchell of equity held by him in and to said mortgaged property.

And your orator alleges and charges that any claims that the said David F. Mitchell may have in the premises, are subject to and are subordinate to your orator's rights in the premises as purchaser of said mortgage and notes without notice or knowledge of any claims or equities existing in the defendant, David F. Mitchell.

And your orator further amends said bill by adding to the prayer thereof:

And by the further order and decree of this Honorable Court, the defendant, David F. Mitchell, may be decreed to have no claim or right in the mortgaged premises as against your orator's right of foreclosure, and that your orator may be held as against the said David F. Mitchell to be entitled to foreclose this mortgage, and recover the full sum, interest, charges and expenses as herein prayed for. And if it be so that the title to the property herein described may be held to have been held in trust for the defendant David F. Mitchell, and if it be so that it is held that the deed executed by the defendant David F. Mitchell to Joseph R. Parrott was a trust in Joseph R. Parrott in favor of David F. Mitchell to secure the payment of the mortgage executed by David F. Mitchell to George D. Huling, and that the deed executed by Joseph R. Parrott to James K. Cogswell was simply an assignment of said mortgage or trust to James K. Cogswell to secure said Huling mortgage, then your orator prays that by the order and decree of this Honorable Court he be held and

decred to be a purchaser of said mortgage and notes without knowledge or notice of any equities existing between the said Joseph R. Parrott or James K. Cogswell and the said David F. Mitchell, and that he took and purchased the said assignment of said mortgage free from any and all equities existing between the said David F. Mitchell and the said Joseph R. Parrott and James K. Cogswell.

And that by the further order and decree of this Honorable Court, if it be held that the said David F. Mitchell possessed the equity of redemption in said property that the said David F. Mitchell may be decreed to pay to your orator whatever sum that may be held to be due to him upon the taking of any account, together with interest, taxes and insurance, reasonable attorney's fees and all other costs, charges and expenses, by a short day to be fixed by this court, and that in default of the said David F. Mitchell making such payment the said mortgaged property may be sold, as the court may direct to satisfy such debt and costs, and that in case of such sale, the defendant David F. Mitchell and all persons claiming by, through or under him, before and after the commencement of this suit, may be forever barred and foreclosed of all right of equity of redemption of said mortgaged property."

The appellant interposed a demurrer, addressed to "the original bill and amendments thereto, or the bill as amended, or the amended bill," which demurrer contains or specifies 36 grounds. The overruling of this demurrer forms the basis for the first assignment. The appellant undertook to appeal from this interlocutory order, as also from other interlocutory orders, but we could not consider the assignment based upon the overruling of the demurrer for the reason that more than six months had elapsed from the entry of such order when the appeal was taken.

Mitchell v. Mason, 61 Fla. 692, 55 South. Rep. 387. Now upon the appeal from the final decree, this assignment is renewed. We do not copy the grounds of the demurrer. As we have already set forth, it was addressed to the entire bi'l. Suffice it to say that some of the grounds go to the equity of the bill, while other grounds attack the frame of the bill. In fine, some of the grounds are general, while others are special. As the demurrer is addressed to the entire bill, we cannot consider the special grounds of the demurrer which are applicable only to particular portions of the bill, but must confine ourselves to those grounds which are applicable to the whole bill. Carlton v. Hilliard, 64 Fla. 228, 60 South. Rep. 220. So confining ourselves and treating the demurrer as a general demurrer, the only point for us to determine is whether there is any equity in the allegations of the bill. If so, the demurrer was properly overruled. See Key West Wharf Coal Co. v. Porter, 63 Fla. 448, 58 South. Rep. 599, and Capital City Bank v. Hilson, 64 Fla. 206, 60 South. Rep. 189, wherein prior decisions of this court will be found cited. It is obvious that the bill is not wanting in equity, therefore this assignment has not been sustained.

Various other documents, papers and pleadings were filed by the respective parties and sundry rulings were made thereon by the court, but there is no occasion for us to deal with any of them. The appellant filed an answer to the original bill and the amndments thereto which covers about 25 typewritten pages, to which answer the complainant filed 28 exceptions for scandal and impertinence, all of which, except those numbered 3, 5, 7, and 22, were sustained and the portions of the answer to which exceptions so sustained were addressed were stricken therefrom. On appeal from this interlocutory order, we held that no error had been made to appear in sustain-

ing the exceptions and we affirmed the order. Mitchell v. Mason, 61 Fla. 692, 55 South. Rep. 387. We shall not undertake to set out the answer as it stands, after the portions to which exceptions were sustained have been eliminated therefrom, as we see no useful purpose to be subserved thereby. It seems sufficient to state very concisely that the defense set up in the answer, and upon which the appellant relies, is that, although the appellant admits the allegation of the bill as to the execution by himself and wife, on the first day of August, 1904, to Parrott of " a deed absolute on its face" to the mortgaged property in dispute, yet in reality such instrument was intended as a mortgage, and, under the provisions of Section 2494 of the General Statutes of Florida of 1906, "was and has ever since remained a mortgage pure and simple." The facts and circumstances relating to and in support of this averment are set out with much fullness and prolixity. We shall have occasion to refer to and discuss them somewhat later on in this opinion. The appellant lays much stress in his answer upon a written instrument, which he designates therein "the written trust agreement," executed by Parrott and himself, which he avers conclusively shows that the conveyance executed by the appellant and his wife to Parrott, though "a deed absolute on its face," was and is a mortgage, "given and accepted to secure the payment of indebtedness." Such "written trust agreement" is not attached as an exhibit to the answer or otherwise described therein than as above, except that it is averred that a copy thereof had been filed by the complainant in this 'itigation in support of an application for an injunction against the defendant. Such instrument was introduced and filed in evidence by the complainant, and we shall have occasion presently to set out the important portions thereof and to discuss their

bearing and effect upon this litigation. The appellant also in his answer relies upon the fact that long prior to the execution by himself and wife of the so-called "deed absolute on its face" to Parrott he was in possession of the mortgaged property, living in the dwelling-house thereon as his home, and that he continued to remain in such possession until after the filing of the original bill in this suit, which possession was "full notice" to the complainant and all others of the "claim, rights, and equities" of the appellant in and to the mortgaged property.

The complainant filed a replication to the answer, and an order was made appointing a special master, with directions to take the testimony in the cause and to report the same to the court, together with his findings. Voluminous testimony was taken by the respective parties, who are the appellant and the appellee here. The special master duly reported such testimony, together with his findings, which findings, omitting the synopsis of the pleadings, are as follows:

"I respectfully report to the court that in my opinion the equities of this cause are with the defendant David F. Mitchell and the complainant's bill should be dismissed at the cost of the complainant.

I further respectfully report that in my opinion the said deed from Mitchell and wife to Joseph R. Parrott and the contract executed by and between them, both of which are filed in evidence, constitute the real transaction between Mitchell and Parrott. That the effect thereof is to make the deed from Mitchell and wife to Parrott a mortgage.

There can be no shadow of a doubt from the testimony in this cause that Admiral Cogswell was fully informed of the defendant Mitchell's claims that the deed was in

effect a mortgage. This is conclusively shown by letters written by him, introduced and filed in evidence, and there is other testimony tending to prove the same to be true.

In my opinion the testimony shows that David F. Mitchell resided upon the land and used the improvements and personal property thereon, as a home, until after the assignment of the Cogswell mortgage to the complainant Harry Mason, and that Mitchell did not finally leave the premises until he was, on the said premises shot at and wounded by a person who, in my opinion had no right to interfere with the defendant's use and occupation of the premises. This in my opinion would, in law, constitute notice to the complainant, Harry Mason. Moreover, the written opinion rendered to the complainant by Judge W. B. Young, wherein Judge Young refers to the Huling mortgage or decree was sufficient to put the complainant upon inquiry which, prosecuted as the law requires would have informed the complainant as to the claims of the defendant Mitchell. There is other evidence that Mason had such notice prior to his purchase of the mortgage.

Whether the instrument claimed by the complainant to be a deed absolute, was such in fact, or whether it is a mortgage, as the defendant Mitchell claims, depends upon the intention of the parties thereto. This intention is not the secret and unexpressed intention of the parties, but their intention as manifested by appropriate acts or declarations, or by circumstances attending the transaction, exemplifying its true nature. It makes no difference that the contract executed by Mitchell and Parrott was of a later date than the deed from Mitchell to Parrott. There can be no doubt, in my opinion, that they were and constituted part of the same transaction.

The evidence shows that Mitchell at the time he made

the deed to Parrott was in financial straights. That he had theretofore borne a confidential and friendly relationship to Joseph R. Parrott, whether it existed at that time or not, and that Parrott was still willing to help him, as is manifested by the transaction itself. In my opinion, the relationship of debtor and creditor existed between Mitchell and Parrott after the execution of the deed. Mitchell's land and property were about to be sold under a decree of foreclosure rendered in favor of one George D. Huling. After the execution of the deed, and as the evidence shows, in consideration thereof, Joseph R. Parrott put up the money to pay the decree. The decree was assigned to Duncan U. Fletcher in trust for Parrott. Subsequently Fletcher assigned the decree to Parrott. So far as the record discloses, in my opinion, the decree has not been satisfied. There is some indefinite testimony to the effect that there has been a satisfaction of the decree, but no formally executed instrument showing that to have been done has been filed in evidence. There can be no contention from the evidnce in this case, in my opinion, that there was a merger of the decree into a legal title in Parrott. Such does not appear to be a fact from the evidence. Mitchell remained in possession of the land and personal property after the deed was executed and delivered. He remained in such possession until after the mortgage herein sought to be foreclosed was assigned to the complainant. It is true that inadequacy of consideration would not be final in determining the question as to whether the instrument was a deed absolute or in fact a mortgage. Such evidence may be considered by the court, however, and evidence of the value of the land and personal property for such mortgage is restricted to the time of the execution and delivery of the deed. In my opinion, the value

of the land and personal property covered by the deed
was greatly in excess of the amount expended by Parrott
on account of the Huling decree, and, in fact, greatly in
excess of that sum and the aggregate of all other indebt-
edness due by Mitchell to Parrott as disclosed by the evi-
dence.

I think it was not the intention of the parties that the
deed should secure the payment by Mitchell to Parrott
of any other indebtedness than that arising out of the
payment by Parrott of the Huling decree.   I do not think
that the evidence shows any other intention than that
Parrott should be secured on account of that decree.  The
acts done and declarations made by Parrott and any
other person authorized to act and speak for him, and
by Mitchell, at a time when under the law such acts and
declarations would be competent evidence in this case
do not show what was to be secured by the deed, except
as disclosed by the written agreement between Mitchell
and Parrott, executed by both, and filed in evidence, and
I regard that agreement as entitled to greater weight in
this cause than the testimony of the witnesses who have
testified.

I think that the complainant has waived any right to
invoke the rule as to testimony as to transactions with
deceased persons, and that this is true of the defendant,
Mitchell.   I think that no decree of sale could be made
herein under the issues made by the pleadings, and I
therefore respectfully recommend that the  bill be dis-
missed at complainant's cost.

All of which is respectfully submitted."

The complainant filed "objections" to the entire report
on various specified grounds and also objections to his
rulings on the admission or rejection of evidence, which
are also specified, which objections cover 75 typewritten

pages. In addition to such objections, the complainant filed 431 exceptions to the report, covering 114 typewritten pages. It is almost inconceivable that there could have been any necessity for filing so many objections and exceptions. It is a practice of which we do not approve. We consider it unfair to the trial court. We would again call the attention of counsel to what we said Seaboard Seaboard Air Line Ry. v. Rentz, 60 Fla. 429, text 438, 54 South. Rep. 13, text 16 as to the duty which counsel owe to the court. We copy the following paragraph: "It is also a well known fact that some of our *nisi prius* courts have so many matters coming before them that frequently they cannot give the time and attention to cases which they would like to do." Think of what an enormous and, as we think, unnecessary burden was cast upon the Circuit Judge by the complainant in pursuing such course. At the hearing upon the special master's report and the objections and exceptions thereto, the Circuit Judge made the following order:

"This cause coming on to be heard upon the report of the special Master, and the objections and exceptions filed thereto, and having been argued and submitted, it is ordered, adjudged and decreed that the objections filed to the Master's report be and the same are hereby overruled.

It is further ordered, adjudged and decreed that the exceptions to the master's report, the 3rd, 4th, 5th, 6th and 7th, exceptions be and each of them is hereby sustained.

It is further ordered, adjudged and decreed that the exceptions to the master's report of his rulings on testimony are too general to require this court to pass on same, but the exceptions in regard to the admissions of the testimony of the defendant, David F. Mitchell, and

conversations and transactions with the deceased are and each of them is hereby sustained.

It is further ordered, adjudged and decreed that the equities of this case are with the complainant and he is entitled to the relief prayed in and by his bill of complaint.

It is, therefore, ordered, adjudged and decreed that Miles W. Lewis, Esq., be and he is hereby appointed Special Master in this case to take and state an account of what is due on the mortgage and the notes secured thereby filed in evidence herein, together with reasonable attorney's fee and such reasonable expenses as he may have incurred in caring for said property.

It is further ordered, adjudged and decreed that the said master be and he is hereby authorized to use any testimony heretofore taken herein, in stating said amount, as well as to take any additional testimony that may be necessary for said purpose.

Done and ordered this 9th day of October, 1911."

In accordance with such order, the special master duly made a report of what he found to be due the complainant upon the mortgage and notes, together with reasonable attorney's fees and the reasonable expenses incurred by the complainant in caring for the mortgaged property. This report was confirmed by the Circuit Judge, and, on the 1st day of December, 1911, a final decree was rendered in favor of the complainant and against all the defendants, in which the mortgaged property was ordered sold by the special master, at public auction, in compliance with law, for the purpose of satisfying and discharging the amounts found in such decree to be due, unless such amounts were paid by the defendants within a time therein specified. From this final decree David

F. Mitchell has entered his appeal and assigns 108 errors, as we have previously said.

We have already disposed of the first assignment. Although, as readily appears from the order which we have copied above, the Circuit Judge sustained but very few of the many exceptions to the special master's report, yet the appellant has assigned over 80 errors upon such order. Again we must express our astonishment and also disapproval of the course which the appellant has pursued. Many of the exceptions to the report had a number of grounds stated in support thereof, this being true of the exceptions which were sustained, for instances, the sixth exception having 14 grounds. The appellant, in framing his assignments, would frame one on the sustaining of the entire exception and then would frame separate assignments as to the sustaining of each ground of such exception. This was not only unnecessary, but improper, and is a practice which we disapprove. The Circuit Judge did not undertake to rule on each ground of the exception which he sustained, as an inspection of his order, which we have copied above, will show, and it was not requisite that he should do so. He simply stated the exceptions which he sustained, without mentioning or referring to any of the grounds. If the appellant had framed an assignment upon each of the exceptions sustained, he would have obtained all the benefit possible therefrom, could have made any argument desired in support thereof, and would thereby have reduced the assignments to a small and reasonable number. The appellant seeks to justify his course by contending in his brief that our decisions require assignments of error, especially in chancery causes, to be separate and specific. In support of this contention, he cites Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318; Daniel v. Seigel-

Cooper Co., 54 Fla. 265, 44 South. Rep. 949; Braxton v. Liddon, 55 Fla. 785, 46 South. Rep. 324; Williams v. State, 58 Fla. 138, 50 South. Rep. 749; McMillan v. Warren, 59 Fla. 578, 52 South. Rep. 825; McKinnon v. Lewis, 60 Fla. 125, 53 South. Rep. 940; Fidelity & Deposit Co., of Maryland, v. Aultman, 61 Fla. 197, 55 Fla. 273. We fully approve of all that is said in these cited cases as to the framing of assignments of error, but nothing said in any one of them warrants or justifies the course which the appellant has pursued, as an examination of such cases will readily show.

Assignments from the 91st to the 108th, inclusive, are based upon the order confirming the master's report as to the amounts found to be due the complainant, and upon the final decree. These assignments also might well have been compressed into less than half their number, and we can see no useful purpose whatever or advantage gained by separating them, as the appellant has done. As we have already said, it is not our intention to treat or discuss the assignments in detail. The appellee has also filed cross-assignments of error upon which he relies, but we shall not discuss them.

We would say that we think that the Circuit Judge was fully justified in refusing to pass or rule on the objections or exceptions to the master's report as to the admission and rejection of testimony, not only because they were "too general," as he says in his order, to require him to pass on them, but because of the enormous number. We think that he might well have refused to pass upon any of the objections or exceptions to the master's report until they had been reduced to a reasonable number. The largeness of the number bore the semblance of trifling with the court.

We think it advisable to lay down some general prin-

ciples for our guidance in reaching a correct conclusion upon this appeal. In a suit in equity, as in an action at law, the issues to be tried and determined are made by the pleadings, and all pleadings should be characterized with certainty, clearness and conciseness, in order that the point or points in controversy be evolved and distinctly presented for decision, the object of all judicial proceedings being to ascertain and decide the disputed points. Seaboard Air Line Ry. v. Rentz, 60 Fla. 429, 54 South. Rep. 13. As we have often held, "It is an established rule of chancery practice, and of pleading and practice generally, that the *allegata* and *probata* must correspond. However full and convincing may be the proof as to any essential fact, unless the fact is averred, proof alone is insufficient. All the evidence offered in a case should correspond with the allegations and be confined to the issues." Tate v. Pensacola, Gulf, Land & Development Co., 37 Fla. 439, 20 South. Rep. 542, 53 Amer. St. Rep. 251. Also see Pinney v. Pinney, 46 Fla. 559, 35 South. Rep. 95, and Goulding Fertilizer Co. v. Johnson, decided here at the present time, wherein prior decisions of this court will be found cited. When a replication is filed to an answer it thereby puts in issue all the matters alleged in the bill and not admitted in the answer, as well as those matters contained in the answer which are not responsive to the bill. When the answer concludes with the usual general denial found in such a pleading as does the answer in the instant case, it is sufficient to make an issue on material allegations in the bill not admitted in the answer and to which no especial response is made. Such statements cannot be taken as admitted to be true, but must be proved by at least a preponderance of the testimony. Matters set up in the answer which are not responsive to the bill, as mat-

ters set up by way of avoidance, must be proved by the defendant, and the burden is upon him to establish such matters by a preponderance of the testimony. A sworn answer denying the allegations in the bill which are essential to sustain the case of complainant and entitles him to relief is evidence in favor of defendant and conclusive, unless overcome by the testimony of two witnesses, or of one witness corroborated by other circumstances which are of greater probative weight than the answer, provided that the oath to the answer has not been waived, as it had not been in the instant case, and the answer is directly and positively responsive to the material allegations of the bill. Pinney v. Pinney, *supra,* and authorities there cited. See also Parken v. Safford, 48 Fla. 290, 37 South. Rep. 567, and Griffith v. Henderson, 55 Fla. 625, 45 South. Rep. 1003.

We find upon a reading of the transcript that much of the testimony introduced both by the complainant and the appellant had no real bearing upon the case and was not relevant to any issue made by the pleadings therein. This is reprehensible, as it not only unnecessarily increases the costs, but entails the expenditures of much time in reading it both by the Circuit Judge and the members of this court to no purpose and also has a tendency to obscure and confuse the real issues. We further find that several documents, some of considerable length, are copied more than once in the transcript, without any apparent reason therefor. This practice is also reprehensible for the reasons stated in Padgett v. State, 64 Fla. 389, 59 South. Rep. 946.

What is the real, the vital, issue made by the pleadings in this case? It seems to us that this question can be readily answered. The complainant seeks to enforce a mortgage lien, created by the execution of a mortgage

by Cogswell and wife to Parrott, which mortgage and the notes secured thereby had been transferred and assigned for value by Parrott to the complainant. None of the heirs-at-law of Cogswell, who were made defendants, are contesting the right of the complainant to the relief sought. The appellant alone is responsible for this protracted litigation. As we have already shown, he admits in his answer the allegation of the bill that he and his wife, on the first day of August, 1904, executed to Parrott a deed to all the mortgage property which was "absolute on its face," but seeks to avoid the force and effect of such instrument by claiming that it was a mortgage. This, being new matter not responsive to the allegations of the bill, was to be established by the appellant by a preponderance of the testimony. Has he succeeded in doing this? That is the point which we are called upon to determine. He relies upon Section 2494 of the General Statutes of Florida of 1906, which is as follows:

"All deeds of conveyance, obligations conditioned or defeasible, bills of sale or other instruments of writing, conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages."

There is no especial difficulty as to the proper construction of this statute, as we have had it before us several times. See Hull v. Burr, 58 Fla. 432, 50 South. Rep. 754, and Elliott v. Conner, 63 Fla. 408, 58 South. Rep. 241, wherein we have fully expressed our views. In the last

cited case we expressly held that, "Where a conveyance of property is absolute on its face, the burden of showing that it was when executed intended to be a mortgage to secure the payment of money is upon the grantor." To the same effect is the case of Chaires v. Brady, 10 Fla. 133. This holding is abundantly supported by the authorities. See 27 Cyc. 1018, and the cases cited in the notes. We would also refer to Elliott v. Bozarth, 52 Oreg. 391, 97 Pac. Rep. 632; Lake v. Weaver (N. J. Eq.), 70 Atl. Rep. 81; Miller v. Peter, 158 Mich. 336, 122 N. W. Rep. 780; Coates v. Marsden, 142 Wis. 106, 124 N. W. Rep. 1057; Ridings v. Marengo Savings Bank, 147 Iowa 608, 125 N. W. Rep. 200; Schmidt v. Barclay, 161 Mich. 1,125 N. W. Rep. 729. The question presented to us for determination is whether or not the appellant has met the burden cast by law upon him.

As we have previously said, the appellant relies largely, in support of his contention, upon a written agreement, made and entered into by and between him and Parrott. This agreement bears date the 11th day of August, 1904, ten days after the execution of the deed referred to above, and in the introductory part thereof recites that it was between the appellant and his wife, as parties of the first part, and Parrott, as party of the second part, but, as a matter of fact, was executed only by the appellant and Parrott. After reciting the execution of the mortgage upon all of the property involved in the instant suit by the appellant and wife to George D. Huling to secure the payment of a promissory note for the sum of $10,000.00 executed by the parties of the first part to Huling and the institution by Huling of foreclosure proceedings by Huling, which culminated in a final decree, dated the 27th day of July, 1904, which decree is set out therein in full, it proceeds as follows:

"Whereas, the said parties of the first part having failed to redeem the property as provided for in said decree, and said property being about to be advertised and sold at public auction under said decree; and

Whereas, the said parties of the first part having made, executed and delivered to said J. R. Parrott a deed under seal to all of said property, real and personal, as appears from the deed dated August 1st, 1904, recorded in Book 22 of Deeds at page 270, Duval County Records, the execution and delivery of which deed is hereby acknowledgd by said parties of the first part;

Now, therefore, the said party of the second part, for and in consideration of the premises, and the making, executing and delivery by the said parties of the first part of the deed of August 1st as aforesaid, hereby covenants and agrees to provide, or cause to be provided, the sum or sums necessary to purchase or redeem the property foreclosed, as aforesaid; and, to secure the party or parties paying said money, shall cause the decree of foreclosure aforesaid to be duly assigned to such party or parties, or other parties, as may be required.

And it is further covenanted and agreed, by and between the parties hereto, for the consideration aforesaid and the payment of one dollar each to the other, as follows:

1. That the decree assigned as aforesaid, together with all interest, court expenses, attorney's fees, taxes, insurance, liens, expense of maintenance and repairs, and all charges, on account of said property, as said party of the second part shall deem necessary or proper, shall first be paid from the proceeds of the sale of the property, real and personal, deeded as aforesaid; that to pay the same

or any parts thereof, the said party of the second part shall sell, or cause to be sold, at public or private sale, at such time or times, and from time to time, and at such price or prices, and upon such terms, as said party of the second part may in his judgment deem advisable, the whole or such part or parts of said property, real and personal, as may be necessary to fully pay off and discharge said decree, together with all interest and other expenses and charges as aforesaid.

2.   That the remainder of said property, if any there be, or any part or parts thereof, shall, if deemed advisable by said party of the second part, be also sold in the manner provided for in paragraph 1, or otherwise disposed of, by said party of the second part, and the proceeds therefrom, being the absolute property of said party of the second part, invested or otherwise disposed of as said party of the second part shall deem proper.

3.   That in the event the conduct of the said David Ferguson Mitchell shall, in the judgment of the said party of the second part, warrant the investment by said party of the second part of any or all of the proceeds of said property, if any there be, after paying and discharging said decree and interest and court expenses, attorney's fees, taxes, insurance, liens, expenses of maintenance and repairs, and all charges, on account of said property, as said party of the second part shall deem necessary or proper, then the said party of the second part will pay, or cause to be paid, to said David Ferguson Mitchell, from time to time and at such times as said party of the second part shall deem necessary, so long as said Mitchell conducts himself in a manner satisfactory to said party of the second part, whatever net income shall result from any such investment or investments, and

the said party of the second part shall not be held responsible for any such investment, nor for any income derived or to be derived therefrom or for any failure or loss thereof.

4.   That in the event of the death of the said David Ferguson Mitchell it is agreed by and between the parties hereto that said party of the second party shall invest, or cause to be invested, the proceeds, if any there be, from the remainder of said property as aforesaid, for the benefit of said Katheryne Sutton Mitchell and Alexander Mitchell, the son of said parties of the first part, or either of them, in such manner and upon such terms as said party of the second part shall deem proper.

5.   That when on account of the sale or other disposition of said property, or any part thereof, by said party of the second part as aforesaid, it shall become necessary, in the judgment of said party of the second part, that said parties of the first part shall make their residence in Jacksonville or elsewhere, then said party of the second part will allow said parties of the first part to have so much and such part of the furniture and personal property aforesaid as said party of the second part shall deem necessary for the use of said parties of the first part, and that until such removal as aforesaid said parties of the first part may have, as tenants at the will of said party of the second part, the use and occupancy of the property, real and personal, aforesaid, or so much thereof as said party of the second part may not sell or otherwise dispose of from time to time as herein provided.

This agreement shall extend to and be binding upon the heirs, personal representatives and assigns of the

respective parties hereunto set their hands and seals the day and year first above written.

(Signed)  David Ferguson Mitchell  (Seal)

(Signed)    J. R. Parrott.              (Seal)

Signed, sealed and delivered in presence of

(Signed)  E. Hale,

(Signed)  A. V. S. Smith."

This instrument was never recorded in the public records of Duval County. So far as is disclosed by the evidence, it was voluntarily executed by both the appellant and Parrott. The latter testifies concerning the same as follows: "There was an agreement which was executed some days after the deed by which I without any consideration, of my own volition, undertook to give Mr. Mitchell the income on any excess over and above the moneys which I had expended, which we might obtain from a sale of the property. That is I was to invest this excess and pay him the income derived therefrom so long as he behaved himself ............................................ I think that is the language of the agreement."

Does this agreement empower and authorize Parrott to sell the property embraced therein? If it does, whatever the instrument, taken in connection with the deed referred to therein, may be, the two instruments together cannot be deemed and held to constiute a mortgage, even under the comprehensive provisions of Section 2494 of the General Statutes of Florida of 1906, copied above. We think that a careful reading of such instrument forces an affirmative answer to the question which we have just propounded. This being true, we think that we have succeeded in striking the jugular, which disposes of the case. Concerning the continued possession of the mortgaged property by the appellant, upon which fact he also relies, it will be observed that it is expressly stip-

ulated in the agreement that the appellant and his wife should continue in such possession "as tenants at the will" of Parrott. It may be that such agreement and deed, construed together, would constitute and be held a trust deed, but, even so, that would not prevent Parrott from making a valid sale and conveyance of the property therein embraced. See the holding and discussion in Christopher v. Mungen, 61 Fla. 513, 55 South. Rep. 273. It may also be true that the appellant, upon a proper showing, would be entitled to an accounting from Parrott, under such agreement, as to a share of the proceeds which Parrott derived from a sale of the mortgaged property to the complainant, but as to that we express no opinion, as no such point is presented to us for decision upon this appeal. Parrott is not a party to this litigation and is not shown to be a necessary party. This being true, the appellant most certainly could not obtain an accounting from him in this proceeding. The appellant has not shown that he was entitled to any accounting from the appellee. He has filed no cross-bill, though he would seem to have filed pretty much everything else, and is not entitled to any affirmative relief upon his answer. See Ocala Foundry & Machine Works v. Lester, 49 Fla. 347, 38 South. Rep. 56. We have considered all the evidence bearing upon the confidential and fiduciary relations existing between the appellant and Parrott and the financial straits to which the appellant had been reduced when he executed the deed to Parrott, but are of the opinion that it cannot avail the defendant in this controversy, since Parrott is not a party thereto and especially since no fraud or deception upon the part of Parrott in his dealings with the appellant would seem to have been established. Even if Parrott made a hard bargain with the appellant, that would not avail,

since the parties were free to make what contracts they pleased, so long as there was no infraction of law in so doing. With the wisdom or folly of contracts which persons who are *sui juris* may make the courts have no concern. See Scotch Manufacturing Co. v. Carr, 53 Fla. 480, 43 South. Rep. 427; Atlantic Coast Line Ry. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761; Southern Home Ins. Co. v. Putnal, 57 Fla. 199, 49 South. Rep. 922; Mizell Live Stock Co. v. J. J. McCaskill Co., 59 Fla. 322, 51 South. Rep. 547; Pine Lumber Co. v. Crystal River Lumber Co., decided here at the present term. We would also refer to the forceful language used by Mr. Justice STONE in Haynie, Adm'r. v. Robertson, 58 Ala. 37, text 39, which was quoted with approval in Hubert v. Sistrunk, — Ala. —, 53 South. Rep. 819.

It follows that we are of the opinion that the final decree should be affirmed. As was well said in McMicken v. Ontario Bank, 20 Can. Sup. Ct. Rep. 548, text 575, "the onus rests altogether upon the appellant not only to rebut the presumption that the title as appearing in the written instrument is in perfect accordance with the intention of the parties, but he must also establish to the satisfaction of the appellate court that the judgment of the court below adverse to his contention is erroneous." We think that the appellant has failed to meet these requirements.

Decree affirmed.

TAYLOR, HOCKER AND WHITFIELD, J. J., concur

COCKRELL, J., absent.